GARRICK A. HOLLANDER -- State Bar No. 166316
ghollander@winthropcouchot.com
PETER W. LIANIDES – State Bar No. 160517
plianides@winthropcouchot.com
JEANNIE KIM – State Bar No. 270713
jkim@winthropcouchot.com
**WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**
660 Newport Center Drive, Fourth Floor
Newport Beach, CA 92660
Telephone: (949) 720-4100
Facsimile: (949) 720-4111

[Proposed] General Insolvency Counsel for
Debtor and Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### RIVERSIDE DIVISION

| | |
|---|---|
| In re<br><br>METROPOLITAN AUTOMOTIVE WAREHOUSE, INC., a California corporation,<br><br>            Debtor and<br>            Debtor-in-Possession. | Case No. 6:16-bk-10096 WJ<br><br>Chapter 11 Proceeding<br><br>**DEBTOR'S <u>EMERGENCY</u> MOTION FOR ORDER AUTHORIZING USE OF ANY CASH COLLATERAL OF SECURED CLAIMANTS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF RONALD TURNER IN SUPPORT HEREOF FILED CONCURRENTLY HEREWITH**<br><br>DATE:    January ___, 2016<br>TIME:    __:__0 __.m.<br>PLACE:  Courtroom 304<br>               3420 Twelfth Street<br>               Riverside, California 92501 |

216246

**TO THE HONORABLE WAYNE E. JOHNSON, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND PARTIES-IN-INTEREST:**

Metropolitan Automotive Warehouse, Inc., a California corporation and the debtor and debtor-in-possession in the above Chapter 11 proceeding (the "Debtor"), hereby moves ("Motion") the Court, <u>on an emergency basis</u>, for an order (i) authorizing the Debtor to use any cash collateral of any secured claimants, including but not limited to any cash collateral of Bank of West (the "Bank"), and to grant to the Bank post-petition replacement liens as and for adequate protection of the Debtors' use of any cash collateral of the Bank, on the terms set forth herein; and (ii) setting a final hearing on this Motion. The Debtors have filed motions to jointly administer their Chapter 11 proceedings. Pending approval of joint administration, the Debtors have filed substantially identical motions in their respective cases.

This Motion is made and based upon the foregoing allegations and representations, the Memorandum of Points and Authorities and the Declaration of Ronald Turner in support of the Motion ("Declaration") filed concurrently herewith, the papers, pleadings and other documents on file in the Debtors' Chapter 11 case, and upon such other evidence, both oral and documentary, that may be submitted to the Court at or before the time of the hearing on this Motion.

WHEREFORE, the Debtor requests that this Court enter its order:

1. Authorizing the Debtor's use of any cash collateral of the Bank pursuant to the terms and conditions contained in this Motion, pending a final hearing;

2. Setting a final hearing on this Motion; and

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

1     3.     Granting such other and further relief as may be just and appropriate in
2 accordance with the circumstances of this case.

3 DATED: January 8, 2016          **WINTHROP COUCHOT**
                                                   **PROFESSIONAL CORPORATION**
4

5                                                By:    /s/ *Garrick A. Hollander*
                                                             Garrick A. Hollander
6                                                               Peter W. Lianides
7                                                               Jeannie Kim
                                  [Proposed] General Insolvency Counsel for Debtor
8                                   and Debtor-in-Possession

216246

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

The Debtors' 60 year old family business employs approximately 1,000 employees in its $250 million business. Immediate use of cash collateral is vital to the sustenance of the Debtors' business and going concern value. The Debtors' hourly workers are expecting to be paid payroll today, Friday, January 8, 2017. If not timely paid, the Debtors face serious and likely risk of the loss of its employees, which could cause the business to come to a grinding halt, thereby causing the loss of jobs and destroying tens of millions of dollars in value. The Bank supports the Debtors' proposed immediate use of cash collateral. Moreover, the Office of the United States Trustee supports that cash collateral and related motions be heard on as shortened time as possible.

## II.

## STATEMENT OF FACTS

### A.  General Description of the Debtor

The Debtor is a family-owned Southern California-based business, distributing aftermarket automotive parts for the last sixty years, with operations in southern California and central California. The Debtor distributes aftermarket automotive parts to retail stores and also sells to, and fulfills orders for, various e-commerce customers. Star Auto Parts, Inc. ("Debtor-Star"), a California corporation and wholly-owned subsidiary of the Debtor, also is a Southern California based retailer of aftermarket automotive parts. Debtor-Star sells aftermarket automotive parts directly to repair facilities also known as the "Do-it-for-Me" channel, end users, also known as the "Do-it-Yourself" channel, and businesses that own and operate vehicle fleets. The Debtor and Debtor-Star (collectively, the "Debtors") employ approximately 1,000 employees.

### B.  Financial Performance of the Debtors

The Debtors generated sales of approximately $225 million and $206 million each of the years ending 2015 and 2014, respectively; while generating a net loss of approximately $4 million

1  and net income of approximately $1 million in each of the years ending 2015 and 2014,
2  respectively.

### C. Secured Claims Asserted Against Debtors' Cash Collateral

Bank of West (the "Bank") is the Debtors' primary secured creditor.  The Bank is also the only creditor that holds lien rights against the Debtors' "cash collateral" as that term is defined in Section 363(a) of the Bankruptcy Code.  Currently, the Debtors owe the Bank approximately $24 million pursuant to a line of credit.

### D. Events Precipitating Chapter 11 Filings

The Debtors grew very rapidly from 2009 through 2015 following the bankruptcy of Pacific Supply, the company's largest competitor, which, at the time, was based in Long Beach, California.  As a result of growing demand during this timeframe, the Debtors expanded operations from one distribution center and eight retail stores in 2009 to five distribution centers and nine retail stores in 2015, as well as launched a business to support a growing list of e-commerce customers across all five distribution centers.  Due to the need to provide high service levels seven days per week and to compete aggressively to maintain and grow its e-commerce business, the business experienced rising operating costs and falling margins leading to operating losses and cash flow issues.

Recently, one of the Debtors' largest unsecured trade creditors filed an action to recover on its claim.  As part of this effort, this creditor filed a motion to appoint a Federal Court receiver in Michigan.  The Michigan court scheduled a hearing to discuss this motion for January 7, 2016.  In order to stave off the potential appointment of a receiver, the Debtors filed for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on January 6, 2016 (the "Petition Date").

### E. The Debtors' Cash Collateral Proposal.

The Debtors propose to use funds claimed as cash collateral by the Bank to pay expenses in connection with the continued operation of the Debtors' business pursuant to the terms and conditions set forth below:

-5-

216246

1. <u>Budget</u>.  The Debtors will be authorized to make the expenditures provided for in the consolidated budget attached as Exhibit "1" to the Declaration, and if necessary, to exceed the amounts set forth in the budget by as much as 15% of budget total; however, if the Debtors' receipts exceed budget, then the Debtors' expenditures may exceed the amount of the expenditures set forth in the budget in proportion to the increase in actual receipts from budgeted receipts.  Any expenditures in excess of this authorization will require the written approval of each respective Bank, or further order of the Court after appropriate notice.  Budget savings for the Debtors in any month may be carried over and used by the Debtors in subsequent months (<u>i.e.</u>, to account for changes in the timing of expenditures by the Debtors).  After the expiration of the term of the budget, the Debtors will be able to obtain use of any cash collateral of the Bank by filing and serving an amended budget; if no objection to the terms of such budget is filed within ten (10) days after the service of such budget, the budget will be deemed to have been approved.

2. <u>Replacement Lien</u>.  As and for additional adequate protection of the Debtors' use of any cash collateral of the Bank, the Bank will be granted replacement liens in the Debtors' post-petition cash, accounts receivable and inventory, and the proceeds of each of the foregoing, to the same extent and priority as any duly perfected and unavoidable liens in cash collateral held by the Bank as of the Petition Date, limited to the amount of any cash collateral of the Bank as of the Petition Date, to the extent that any cash collateral of the Bank is actually used by the Debtors.

3. <u>Reservation of Rights</u>.  All rights of the Debtors, any Official Unsecured Creditors' Committee that may be appointed (the "Committee") and all other parties-in-interest are hereby reserved to object to the validity, priority and extent of the Bank's liens, if any, encumbering the Debtors' assets.

4. <u>Financial Reporting</u>.  The Debtors will provide to the Bank all monthly operating reports required to be submitted to the Office of the United States Trustee, and monthly cash flow reports, broken down by the expense line items contained in the budget, within 25 days after the end of each monthly period after the Petition Date.

216246

5. <u>Final Hearing on this Motion</u>. The Debtors reserve the right to seek, at the final hearing on this Motion, use of cash collateral different from that set forth herein.

Based upon the budget set forth in Exhibit "1," the Debtors believe that this Court should authorize the Debtors' continued use of cash collateral in connection with its ongoing business operations.

## III.

## THE USE OF THE CASH COLLATERAL SHOULD BE AUTHORIZED IN ACCORDANCE WITH THE BUDGET

To obtain court authorization to use cash collateral, a debtor must establish that the "interest" of creditors holding liens on the subject collateral will remain "adequately protected." 11 U.S.C. § 363(e). Pursuant to *United States v. Timbers of Inwood Forest*, 484 U.S. 365, 108 S. Ct 626 (1988), the "interest in property" entitled to adequate protection under Section 363(e) is no more or less than the "value of the collateral" that is subject to the secured creditor's lien.

Under the *Timbers*' holding, a debtor is merely required to show that the secured creditor's collateral will not decline in value under the debtor's proposed usage of cash collateral. *See Timbers*, 108 S. Ct at 633; *see also In re Ledgemere Land Corp.*, 116 B.R. 338, 343 (Bankr. D. Mass. 1990) (So long as the receivables being collected and used by the debtor are being replaced by sufficient new receivables in which the creditor is granted a security interest, the creditor is adequately protected); *In re Johnson*, 90 B.R. 973, 978 (Bankr. D. Minn. 1988) (Since value of the collateral has not declined, the bank is not impaired and is not entitled to receive adequate protection payments); *In re Century Inv. Fund VII, Ltd. P'ship*, 96 B.R. 884, 887 (Bankr. E.D. Wis. 1989) (Where value appears to be stable, creditor is not entitled to adequate protection payments); *In re Kessler*, 86 B.R. 134, 136 (Bankr. C.D. Ill. 1988) (under *Timbers*, the sellers are not entitled to adequate protection payments, as there was no showing the 80-acre tract was depreciating in value); *In re Anderson*, 88 B.R. 877, 889 (Bankr. N.D. Ind. 1988) (Secured creditor required to show a necessity for adequate protection by showing a decline in asset value from the petition date); *In re McCombs Props. VI, Ltd.*, 88 B.R. 261 (Bankr. C.D. Cal. 1988); *In re Elmore*, 94 B.R. 670 (Bankr. C.D. Cal. 1988). Alternatively, a debtor can make an adequate protection

showing even where the collateral is declining in value, as long as the creditor's interest therein is protected by a reasonable equity cushion. *See In re Mellor*, 734 F. 2d 1396 (9th Cir. 1984); *In re Harrington & Richardson, Inc.*, 48 B.R. 431 (Bankr. D.Mass. 1985); *In re McCombs Props. VI, Ltd.*, *supra*.

As reflected in the budget, the Debtors project to generate almost $3 million in cash, net of disbursements in the first two weeks alone. The Debtors assert that the Bank's indebtedness will not decline through the usage proposed by herein. To the contrary, this usage will preserve and increase the overall value of this collateral. Additionally, in this case, the Bank's $24 million asserted secured claim is protected by a going concern value that is well in excess of this claim based on an existing letter of intent received for the purchase of the Debtors' business. This cushion, without more, provides this creditor ample adequate protection. *See In re Mellor*, *supra*; *In re Harrington & Richardson, Inc.*, *supra*; *In re McCombs Props. VI, Ltd.*, *supra*.

### IV.

### RELIEF IS JUSTIFIED ON AN EMERGENCY BASIS

In Section 363(c)(3) of the Bankruptcy Code, Congress recognized that preliminary hearings on cash collateral would frequently be held on an emergency basis by stating therein that such hearing "shall be scheduled in accordance with the needs of the debtor". 11 U.S.C. § 363(c)(3). The courts have also recognized that emergency relief on the use of cash collateral is necessary after a case is filed. *See In re Center Wholesale, Inc.*, 759 F. 2d 1440, 1444 (9th Cir. 1985) ("We realize that 'in certain circumstances the entire reorganization effort may be thwarted if emergency relief is withheld' and that reorganization under the Bankruptcy Code 'is a perilous process, seldom more so than at the outset of the proceedings when the debtor is often without sufficient cash flow to fund essential business operations.' … It is for this very reason that Congress specified that hearings concerning the use of cash collateral 'shall be scheduled in accordance with the needs of the debtor.' "); *see also In re Sullivan Ford Sales*, 2 B.R. 350, 355 (Bankr. D. Me. 1980).

As indicated above, in order to preserve and maintain its business, the Debtor must have the ability to pay the expenses set forth in the budget. Without this relief, the Debtors' business

will precipitously decline in value damaging the interests of all creditors and this reorganization effort. On these facts and circumstances good cause exists for an expedited hearing on limited notice.

## V.

## **CONCLUSION**

Based upon the foregoing, the Debtor respectfully requests that this Court enter its order:

1. Finding that the Bank's interests in any cash collateral are adequately protected;
2. Authorizing, on an interim basis pending final hearing on notice to creditors, the Debtor's immediate use of any cash collateral of the Bank pursuant to the terms and conditions contained in this Motion;
3. Setting a final hearing on this Motion; and
4. Granting to the Debtor such other and further relief as the Court may deem just and proper.

DATED: January 8, 2016  **WINTHROP COUCHOT PROFESSIONAL CORPORATION**

By: */s/ Garrick A. Hollander*
Garrick A. Hollander
Peter W. Lianides
Jeannie Kim
[Proposed] General Insolvency Counsel for
Debtor and Debtor-in-Possession

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 660 Newport Center Drive, 4th Floor, Newport Beach, CA 92660.

A true and correct copy of the foregoing document entitled: **DEBTOR'S EMERGENCY MOTION FOR ORDER AUTHORIZING USE OF ANY CASH COLLATERAL OF SECURED CLAIMANTS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF RONALD TURNER IN SUPPORT HEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On January 8, 2016, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Harold L Collins    halc@knfilters.com, hcollinslaw@aol.com
- Everett L Green    everett.l.green@usdoj.gov
- James A Hayes    jhayes@jamesahayesaplc.com
- Garrick A Hollander    ghollander@winthropcouchot.com, pj@winthropcouchot.com;vcorbin@winthropcouchot.com;mconour@winthropcouchot.com
- Gregory K Jones    GJones@dykema.com, CPerez@dykema.com
- Alan I Nahmias    anahmias@mbnlawyers.com, jdale@mirmanbubman.com
- Daniel H Reiss    dhr@lnbyb.com, dhr@ecf.inforuptcy.com
- United States Trustee (RS)    ustpregion16.rs.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on January 8, 2016, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Via Attorney Service (Bin outside of Courtroom 304)
Honorable Wayne Johnson
3420 Twelfth St., Suite 384
Riverside, CA 92501-3819

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 8, 2016 | Viann Corbin | /s/ | *Viann Corbin* |
|---|---|---|---|
| *Date* | *Printed Name* | | *Signature* |

216246