| | |
|---|---|
| 1 | GARRICK A. HOLLANDER – State Bar No. 166316 |
| 2 | ghollander@winthropcouchot.com |
|   | PETER W. LIANIDES – State Bar No. 160517 |
| 3 | plianides@winthropcouchot.com |
|   | JEANNIE KIM – State Bar No. 270713 |
| 4 | jkim@winthropcouchot.com |
| 5 | **WINTHROP COUCHOT** |
|   | **PROFESSIONAL CORPORATION** |
| 6 | 660 Newport Center Drive, Fourth Floor |
|   | Newport Beach, CA 92660 |
| 7 | Telephone: (949) 720-4100 |
|   | Facsimile: (949) 720-4111 |
| 8 | |
| 9 | [Proposed] General Insolvency Counsel for |
|   | Debtor and Debtor-in-Possession |

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**RIVERSIDE DIVISION**

| | |
|---|---|
| In re: | Case No. 6:16-bk-10096 WJ |
| METROPOLITAN AUTOMOTIVE WAREHOUSE, INC., a California corporation, | Chapter 11 Proceeding |
| | **DEBTOR'S <u>EMERGENCY</u> MOTION FOR ORDER AUTHORIZING RETENTION OF CASH MANAGEMENT SYSTEM; MEMORANDUM OF POINTS AND AUTHORITIES** |
| Debtor and Debtor-in-Possession. | |
| | **[DECLARATION OF RONALD TURNER IN SUPPORT THEREOF FILED CONCURRENTLY HEREWITH]** |
| | [11 U.S.C. § 363] |
| | DATE: January ___, 2016 |
| | TIME: __:__0 __.m. |
| | PLACE: Courtroom 304 |
| | 3420 Twelfth Street |
| | Riverside, California 92701 |

216250

Metropolitan Automotive Warehouse, Inc., a California corporation, the debtor and debtor-in-possession in the above-captioned Chapter 11 proceeding ("Debtor-Metro"), together with Star Auto Parts, Inc., the debtor and debtor-in-possession in the Chapter 11 proceeding styled *In re Star Auto Parts, Inc.* (Case no. 6:16-bk-10105 WJ) ("Debtor-Star," and, together with "Debtor-Metro," collectively, the "Debtors") [1], hereby move the Court (the "Motion"), <u>on an emergency basis</u>, for an order granting the following relief:

    A.    Authorizing the Debtors to continue to use their pre-petition cash management system ("Cash Management System") more fully described herein;

    B.    Authorizing the Debtors to retain their pre-petition merchant services accounts described herein;

    C.    Authorizing the Debtors to retain their pre-petition bank accounts held at (1) Wells Fargo Bank, N.A. ("Wells Fargo"), for the purposes of receiving cash and check deposits from the Debtors' retail stores and sweeping such deposits into the Debtors' bank account held at Bank of the West, N.A. ("BOW"), and (2) BOW, for the purposes of receiving cash, check, and wire transfer deposits from the Debtors' "Wells Fargo Account" and certain customers;

    D.    Authorizing the Debtors to transfer, on a routine basis, all deposits of cash, check and wire transfers made to the Debtors' "BOW Account" into post-petition debtor-in-possession bank accounts ("DIP Accounts"), which accounts the Debtors will open in accordance with the requirements and guidelines set forth by the Office of the United States Trustee; and

    E.    Granting to the Debtors such further relief as the Court deems just and proper.

Good cause exists to authorize the Debtors to maintain their Cash Management System and the granting of the other relief requested herein are necessary to ensure the continued

---

[1] On January 7, 2016, the Debtors each filed in their respective cases the *Debtor's <u>Ex Parte</u> Motion for Order Authorizing Joint Administration of Related Chapter 11 Cases* [*In re Metropolitan Automotive Warehouse, Inc.*, Case no. 6:16-bk-10095 WJ, Docket no. 6; *In re Star Auto Parts, Inc.*, Case no. 6:16-bk-10105 WJ, Docket no. 4] (collectively, the "Joint Administration Motions"). The Joint Administration Motions currently are set for hearing on January 20, 2016, at 3:00 p.m.

efficient operation of the Debtors' businesses. A termination of the Cash Management System would lead to a disruption in the Debtors' operations and be detrimental to the Debtors' creditors.

This Motion is based upon the within Memorandum of Points and Authorities, the Declaration of Ronald Turner filed concurrently herewith, all pleadings, papers and records on file with the Court and such other evidence, oral or documentary, as may be presented to the Court at the time of the hearing on the Motion.

DATED: January 8, 2016

**WINTHROP COUCHOT PROFESSIONAL CORPORATION**

By:  */s/ Garrick A. Hollander*
    Garrick A. Hollander
    Peter W. Lianides
    Jeannie Kim
[Proposed] General Insolvency Counsel for Debtor and Debtor-in-Possession

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## THE NEED FOR EMERGENCY RELIEF

The Debtors must maintain their Cash Management System in order to continue their business operations. Any change in the Debtors' Cash Management System could delay significantly the Debtors' receipt of cash collections, which could substantially impair the Debtors' operations and be detrimental to the Debtors' creditors. Requiring the Debtors to reestablish all of their accounts, post-petition, would: (1) increase the Debtors' overhead costs, particularly with respect to the Debtors' financial reporting; and (2) delay and significantly burden the administration of the Debtors' estates and the operation of their businesses. Authorizing the Debtors to maintain their existing Cash Management System is the most efficient way that the Debtors can run their businesses and is necessary to prevent disruption and damage to the Debtors' operations.

## II.

## STATEMENT OF FACTS

### A. Background of Debtors

Debtor-Metro is a family-owned Southern California-based business, distributing aftermarket automotive parts for the last 60 years, with operations in Southern California and Central California. Debtor-Metro distributes aftermarket automotive parts to retail stores and also sells to and fulfills orders for various e-commerce customers. Debtor-Star, a wholly-owned subsidiary of Debtor-Metro, also is a Southern California-based retailer of aftermarket automotive parts. Debtor Star sells aftermarket automotive parts directly to repair facilities also known as the "Do-it-for-Me" channel, end users, also known as the "Do-it-Yourself" channel, and businesses that own and operate vehicle fleets. The Debtors employ, in the aggregate, approximately 1,000 employees.

### B. Financial Performance of the Debtors

The Debtors generated sales of approximately $225 million and $206 million each of the years ending 2015 and 2014, respectively; while generating a net loss of approximately $4 million

and net income of approximately $1 million in each of the years ending 2015 and 2014, respectively.

### C. Secured Claims Asserted Against Debtor's Cash Collateral

BOW is the Debtors' primary secured creditor. BOW is also the only creditor that holds lien rights against the Debtors' "cash collateral" as that term is defined in Section 363(a) of the Bankruptcy Code. Currently, the Debtors owe to BOW approximately $24 million pursuant to a line of credit.

### D. Events Precipitating Chapter 11 Filings

The Debtors grew very rapidly from 2009 through 2015 following the bankruptcy of Pacific Supply, the company's largest competitor, which, at the time, was based in Long Beach, California. As a result of growing demand during this timeframe, the Debtors expanded operations from one distribution center and eight retail stores in 2009 to five distribution centers and nine retail stores in 2015, as well as launched a business to support a growing list of e-commerce customers across all five distribution centers. Due to the need to provide high service levels seven days per week and to compete aggressively to maintain and grow its e-commerce business, the business experienced rising operating costs and falling margins leading to operating losses and cash flow issues.

Recently, one of the Debtors' largest unsecured trade creditors filed an action to recover on its claim. As part of this effort, this creditor filed a motion to appoint a Federal Court receiver in Michigan. The Michigan court scheduled a hearing to discuss this motion for January 7, 2016. In order to stave off the potential appointment of a receiver, the Debtors each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on January 6, 2016 (the "Petition Date").

### E. The Cash Management System

The Debtors use centralized collection and accounting systems, i.e., the "Cash Management System," in order to minimize costs and maximize internal efficiencies. This Cash Management system is critical to the Debtors' operations. The Debtors maintain accounts at Wells Fargo and BOW (collectively, the "Pre-Petition Accounts").

1  Debtor-Star has nine retail stores. Pre-petition, the managers of Debtor-Star's retail stores deposited, or caused the deposits of, cash and checks into the Wells Fargo Account by making deposits at various Wells Fargo branch locations that are very close in geographic proximity to the Debtor-Star's retail stores. The Debtors then transferred monies deposited into the Wells Fargo Account to the BOW Account. Additionally, certain customers of Debtor-Metro also make payments to Debtor-Metro for goods by depositing funds to the BOW Account. It is important to note that Debtor-Star uses the Wells Fargo Account for the sole purpose of receiving cash and check deposits from its retail stores. Pre-petition, the Debtors used the BOW Account to fund the Debtors' operating expenses, including, e.g., payroll.

### III.
### THE DEBTORS' REQUEST TO MAINTAIN THEIR CASH MANAGEMENT SYSTEM

The Debtors presently continue to maintain their bank accounts at Wells Fargo and BOW. By this Motion the Debtors seek Court authorization to maintain the Cash Management System described above. The Debtors further seek Court authorization to transfer, on a routine basis, funds from the BOW Account to the Debtors' DIP Accounts, i.e., <u>newly created</u> post-petition, debtor-in-possession general operating and payroll accounts for each of the Debtors, in accordance with the requirements and guidelines set forth by the Office of the United States Trustee. The Debtors represent that their secured creditor, BOW, supports the Debtors' requests and, as an added measure, will implement mechanisms to impair the Debtors from writing checks or otherwise withdrawing funds from the BOW Account, <u>other than</u> transferring funds into the DIP Accounts.

Without Court authorization to maintain the Cash Management System as is, the Debtors will be required to inform hundreds of customers of the Debtors' new banking information so that the Debtors may continue to receive payments for goods sold. As a result, the Debtors may experience delay in collecting on their accounts receivable, or even run the risk of not any receiving payments for goods sold, due to confusion, human error, and any number of reasons for lost or delayed payments.

# IV.

## MAINTENANCE AND CONTINUED USE OF THE DEBTORS' CASH MANAGEMENT SYSTEM IS IN THE BEST INTERESTS OF THE DEBTORS' ESTATES

It is customary in complex cases for bankruptcy courts to enter orders approving the continued use of pre-existing cash management systems. The benefits of permitting debtors to continue the use of their pre-existing cash management systems is obvious. The potentially devastating effect on debtors having to completely revamp their management and financial structures in order to operate within a "standard" Chapter 11 cash management system is equally obvious. Because these considerations are so obvious, few (if any) requests for approval of existing cash management systems are ever contested. As such, there is little published authority on the subject.

Virtually all references to court orders authorizing the continued use of centralized cash management systems are found in opinions regarding collateral proceedings, rather than in reported decisions approving or disapproving the use of a particular system.[2] The continued, post-petition use of cash management systems employed in the ordinary course of a debtor's pre-petition business has been approved as a routine matter in unreported decisions in a number of other large and complex Chapter 11 cases.[3] Bankruptcy courts routinely permit debtors to use

---

[2] See, e.g., In re HSSI, Inc., 176 B.R. 809 (Bankr. N.D. Ill. 1995), rev'd on other grounds and remanded, 193 B.R. 851 (N.D. Ill. 1996) (U.S. Trustee motion for payment of statutory fees; refers to previously approved centralized cash management system); In re Interco, Inc., 130 B.R. 301 (Bankr. E.D. Mo. 1991) (court declined to clarify order authorizing maintenance of existing cash management systems and continued use of certain existing bank accounts, investment and deposit guidelines and certain business forms); In re FRG, Inc., 107 B.R. 461, 465 (Bankr. S.D.N.Y. 1989) (order on motion to transfer venue; refers to "Application for Order Authorizing Debtors to Continue Prepetition Cash Management Systems"); In re Family Health Services, Inc., 104 B.R. 279, 281 (Bankr. C.D. Cal. 1989) rev'd on other grounds 143 B.R. 232 (C.D. Cal. 1992) (order on motion to dismiss; refers to debtor's consolidated "cash management system"), rev'd on other grounds and remanded, 143 B.R. 232 (C.D. Cal. 1992).

[3] See, e.g., In re Abrasive Indus., Inc., No. 94-135-HSB (Bankr. D. Del Feb. 22, 1994) (order approving continued post-petition use of debtor's existing pre-petition cash management system and granting other related relief); In re Gantos, Inc., No. SG 93-85478 (Bankr. W.D. Mich. Nov. 12, 1993); In re Rax Restaurants, Inc., No. 2-92-08584 (Bankr. S.D. Ohio Nov. 24, 1992); In re Phar-Mor, Inc., Nos. 92-41599 through 92-41614 (Bankr. N.D. Ohio Aug. 18, 1992); In re Trans World Airlines, Inc., No. 92-115 (Bankr. D. Del. Jan. 31, 1992); In re Federated Dep't Stores, Inc., No. 1-90-00130 (Bankr. S.D. Ohio Jan. 15, 1990).

their existing bank accounts under such circumstances, finding that such relief is entirely consistent with applicable provisions of the Bankruptcy Code.[4]

In this case, good cause exists to authorize the Debtors' continued use of their prepetition Cash Management System. Reestablishment of the Debtors' accounts would increase overhead costs, particularly with respect to the Debtors' financial reporting, delay and significantly burden the administration of the Debtors' estate and the operations of the Debtors' businesses. Moreover, any change in the Cash Management System could delay significantly the Debtors' receipt of cash collections, which could substantially impair materially the Debtors' operations and be detrimental to the Debtors' creditors. Maintaining the Debtors' existing Cash Management System is the most efficient way that the Debtors can run their businesses and is necessary to prevent disruption and damage to the Debtor's operations. Accordingly, the Debtors request authority to continue to use their existing Cash Management System by keeping open their Pre-Petition Accounts.

The Debtors also submit the both BOW and Wells Fargo are on the Office of the United States Trustee "Approved Depository" list (as of August 6, 2015). *See* http://www.justice.gov/ust-regions-r16/file/approved_depositories.pdf/download.

**V.**

**THE RELIEF REQUESTED HEREBY IS JUSTIFIED ON AN EMERGENCY BASIS**

Rule 9006(c)(1) of the Federal Rules of Bankruptcy Procedure provides that, for "cause shown," a bankruptcy court may reduce the time periods provided for service in the Bankruptcy Rules, except as to the time periods provided in Rule 9006(c)(2). Since the time period at issue in this Motion is not one of those listed in Rule 9006(c)(2), this Court has the power to grant the

---

[4] See, e.g., In re CSC Indus., Inc. and In re Copperweld Steel Co., Nos. 93-41898 and 93-41899 (Bankr. N.D. Ohio Nov. 22, 1993) (order approving continued post-petition use of debtor's existing bank accounts and granting other related relief); In re Herman's Sporting Goods, Inc., No. 83-31529 (Bankr. D.N.J. Mar. 15, 1993) (order approving continued post-petition use of debtor's existing bank accounts and granting other related relief); In re Trans World Airlines, Inc., No. 92-115 (Bankr. D. Del. Jan 31, 1992) (order approving continued post-petition use of debtor's existing bank accounts and granting other related relief); In re Coleco Indus., Inc., No. 88-B-11505 (PBA) (Bankr. S.D.N.Y. July 11, 1988) (order authorizing maintenance of bank accounts and continued use of business forms and directing payment of payroll checks); In re New York City Shoes, Inc., 78 B.R. 426, 427 (Bankr. E.D. 1987) (order authorizing maintenance of bank accounts); In re Grant Broadcasting, Inc., 75 B.R. 819, 820 (E.D. Pa. 1987) (referring to separate order authorizing use of cash collateral and pre-petition bank accounts).

relief prayed for herein on an "emergency" basis. Local Bankruptcy Rule 9075-1(a)(2) for the Central District of California provides for hearings on an emergency basis, including hearings on less than 48 hours' notice

As set forth in detail in the Turner Declaration, cause exists for authorizing the relief requested herein on an emergency basis.

## VI.
## **THE NOTICE GIVEN OF THIS MOTION IS APPROPRIATE UNDER THE FACTS AND CIRCUMSTANCES OF THIS CASE**

The Debtors have served a copy of this Motion on the secured creditors, the unsecured creditors holding the 20 largest claims against the Debtors and the Office of the United States Trustee. The Debtors respectfully submit that such notice is appropriate and comports with the requirements of the Federal Rules of Bankruptcy Procedure ("FRBP") and the Local Bankruptcy Rules ("LBR"). See Rule 2002 of the FRBP; Rule 9006(c) of the FRBP; Rule 9075-1(a) of the LBR.

## VII.
## **CONCLUSION**

Based upon the foregoing, the Debtors respectfully request that this Court enter an order granting the relief prayed for herein.

DATED: January 8, 2016    **WINTHROP COUCHOT PROFESSIONAL CORPORATION**

By: */s/ Garrick A. Hollander*
    Garrick A. Hollander
    Peter W. Lianides
    Jeannie Kim
[Proposed] General Insolvency Counsel for
Debtor and Debtor-in-Possession

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 660 Newport Center Drive, 4th Floor, Newport Beach, CA 92660.

A true and correct copy of the foregoing document entitled: **DEBTOR'S EMERGENCY MOTION FOR ORDER AUTHORIZING RETENTION OF CASH MANAGEMENT SYSTEM; MEMORANDUM OF POINTS AND AUTHORITIES** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On January 8, 2016, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Harold L Collins    halc@knfilters.com, hcollinslaw@aol.com
- Everett L Green    everett.l.green@usdoj.gov
- James A Hayes    jhayes@jamesahayesaplc.com
- Garrick A Hollander    ghollander@winthropcouchot.com, pj@winthropcouchot.com;vcorbin@winthropcouchot.com;mconour@winthropcouchot.com
- Gregory K Jones    GJones@dykema.com, CPerez@dykema.com
- Alan I Nahmias    anahmias@mbnlawyers.com, jdale@mirmanbubman.com
- Daniel H Reiss    dhr@lnbyb.com, dhr@ecf.inforuptcy.com
- United States Trustee (RS)    ustpregion16.rs.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on January 8, 2016, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Via Attorney Service (Bin outside of Courtroom 304)
Honorable Wayne Johnson
3420 Twelfth St., Suite 384
Riverside, CA 92501-3819

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 8, 2016 | Viann Corbin | /s/ *Viann Corbin* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |