GARRICK A. HOLLANDER – State Bar No. 166316
ghollander@winthropcouchot.com
PETER W. LIANIDES – State Bar No. 160517
plianides@winthropcouchot.com
JEANNIE KIM – State Bar No. 270713
jkim@winthropcouchot.com
**WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**
660 Newport Center Drive, Fourth Floor
Newport Beach, CA 92660
Telephone:  (949) 720-4100
Facsimile:  (949) 720-4111

[Proposed] General Insolvency Counsel for
Debtor and Debtor-in-Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**RIVERSIDE DIVISION**

| | |
|---|---|
| In re: | Case No. 6:16-bk-10096 WJ |
| METROPOLITAN AUTOMOTIVE WAREHOUSE, INC., a California corporation, | Chapter 11 Proceeding |
| | **DECLARATION OF RICHARD M. PACHULSKI IN SUPPORT OF DEBTOR'S MOTION FOR ENTRY OF ORDER PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE APPROVING THE ENGAGEMENT CONTRACT OF RICHARD M. PACHULSKI AS CHIEF RESTRUCTURING OFFICER OF THE DEBTOR, NUNC PRO TUNC TO THE PETITION DATE** |
| Debtor and Debtor-in-Possession. | |
| | DATE: January ___, 2016<br>TIME: __:__0 __.m.<br>PLACE: Courtroom 304<br>3420 Twelfth Street<br>Riverside, California 92501 |

216250

I, Richard M. Pachulski, declare and state as follows:

1. I have personal knowledge of the facts stated herein, except as to those facts stated upon information and belief, and as to those facts, I believe them to be true. If called as a witness to testify herein, I could and would testify completely to the following:

2. I submit this Declaration and the related exhibits in support of the Motion (the "Motion")[1] of the above-captioned debtor and debtor in possession (the "Debtor") for an order approving the Engagement Contract, pursuant to which I will serve as Chief Restructuring Officer ("CRO") to the Debtor.

**Qualifications**

3. I am a founding member of the law firm Pachulski Stang Ziehl & Jones LLP ("PSZJ" or the "Firm"). The Firm has represented debtors, trustees and creditors' committees in significant bankruptcy cases throughout the United States. Recently, I was lead counsel for the Firm's representation of American Suzuki Motor Corporation ("ASMC") in its chapter 11 case in the Central District of California. ASMC was the sole distributor in the continental United States of Suzuki automobiles, motorcycles, all-terrain vehicles, and outboard engines. The Firm obtained the necessary support of creditors and confirmed a chapter 11 liquidating plan less than four months after the petition date and the plan became effective less than a month later. The sale through the plan preserved the hundreds of ASMC motorcycle, all-terrain vehicle, and marine dealers while at the same time ensuring 100% payment to unsecured creditors that resolved their claims with ASMC. I also represented Lehman Brothers as lead bankruptcy counsel in the SunCal chapter 11 cases pending in the Central District, in which Lehman Brothers was a lender or a joint venture partner in 26 largely undeveloped parcels in which Lehman Brothers collectively loaned or invested over $2 billion.

4. Over the years, I have represented numerous trustees in large, complex matters, including recently in the Namvar/Namco matters. Additionally, I was an active chapter 7 and chapter 11 trustee from 1983 through 1987. Although no longer an active trustee, I was appointed

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

-2-

in January 2015 as the chapter 11 trustee in the Randall William Blanchard case pending before the Honorable Judge Scott C. Clarkson. Blanchard was a very contentious case in which I, with the assistance of counsel, crafted a fully consensual plan of reorganization within 60 days after my appointment.

5. In addition, I am an active member and principal of two real estate companies, Rubin-Pachulski Properties ("RPP") and separately, RPD Catalyst ("RPD"). I am intimately involved with the day-to-day operations of RPP and RPD and oversee all formation documents and deal issues associated with both companies and their funds. For instance, in 2014 I oversaw the sale of over $190 million of real estate for RPP and $75 million for RPD. This experience enables me to bring a practical, business perspective to the legal issues confronting the Debtor.

**Services to be Provided**

6. As further detailed in the Motion, and pursuant to the Engagement Contract (Exhibit "1" hereto), the Debtor seeks an order authorizing my employment to provide the Debtor management services and guide existing management through a restructuring of the Debtor's operations and a successful resolution of its chapter 11 case.

7. If employed, I will endeavor to coordinate with the other professionals retained in this bankruptcy case to eliminate unnecessary duplication or overlap of work.

8. To address and perform the Services on behalf of the Debtor, I will be assisted by attorneys and paraprofessional personnel provided by PSZJ.

**General Disinterestedness of Mr. Pachulski**

9. In connection with my proposed retention by the Debtor, I have reviewed my connections with the Debtor and various parties in interest in the Bankruptcy Case (the "Interested Parties").

10. To the best of my knowledge after due inquiry, I have not been employed by any party in interest of any other entity, other than the Debtor, in connection with the Debtor's Bankruptcy Case. I do not have any connection with the Debtor, its equity holders, current or former officers and directors, its significant creditors, prospective buyers or investors, the United

States Trustee or any other significant party with an actual or potential interest in this bankruptcy case.

11. I have not served in any prepetition role with the Debtor, including as officer, director, employee or consultant of the Debtor.

12. From time to time, in my capacity as a partner of PSZJ, I have provided services, and likely will continue to provide services, to certain creditors of the Debtor and various other parties adverse to the Debtor in matters unrelated to this bankruptcy case. These unrelated matters involve numerous attorneys, financial advisors, and creditors, some of whom may be claimants or parties with actual or potential interests in this bankruptcy case or may represent such parties.

13. Additionally, in the ordinary course of my legal practice, I may work with counsel or other professionals in unrelated matters who now represent, or who may in the future represent, creditors, or other interested parties in this bankruptcy case.

14. The Debtor maintains business relationships with numerous shareholders, lenders, creditors and other parties. I may have advisory or other commercial or professional relationships with such entities or persons unrelated to the Debtor or its business affairs. Except for my partnership at PSZJ, no other such relationships are related to this bankruptcy case.

15. Because the Debtor is a large enterprise with numerous creditors and other relationships, I am unable to state with certainty that every client relationship or other connection has been disclosed. If I discover additional information that requires disclosure, I will file a supplemental disclosure with the Court.

16. I have not been retained to assist any entity or person other than the Debtor on matters relating to, or in connection with, this bankruptcy case. If this Court approves the Motion, I will not accept any engagement or perform any services for any entity or person other than the Debtor in this bankruptcy case. The Firm, however, reserves the right to expand the scope of its services to provide special counsel legal services to the Debtor. Further, I will continue to provide professional services to, and engage in commercial or professional relationships with, entities or persons that may be creditors of the Debtor or parties in interest in this bankruptcy case, provided,

however, that such services do not relate to, or have any direct connection with, this bankruptcy case.

17. I did not perform any services for the Debtor prior to the Petition Date, and thus I am not a prepetition creditor of the Debtor.

18. To the best of my knowledge, I am a "disinterested person" as that term is defined in section 101(14) of title 11 of the United States Code (the "Bankruptcy Code"), as modified by section 1107(b) of the Bankruptcy Code, in that:

    a. I am not a creditor, equity security holder or insider of the Debtor;

    b. I am not and was not, within two years before the date of the filing of the petition, a director, officer or employee of the Debtor, with the exception of my being appointed CRO following the bankruptcy filing;

    c. I do not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, in connection with, or interest in, the Debtor, or for any other reason.

### Disclosure of Compensation

19. I have not received any payment or compensation from the Debtor, either pre-petition or post-petition, and I have not received any promises as to payment or compensation in connection with this Bankruptcy Case other than in accordance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the United States Trustee Guidelines, and as disclosed in the Motion.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed this 8th day of January, 2016, at Los Angeles, California.

_____
Richard M. Pachulski

**EXHIBIT "1"**

# ENGAGEMENT CONTRACT

This Agreement sets forth the terms of the retention of Richard M. Pachulski ("Pachulski") to serve as Chief Restructuring Officer of Metropolitan Automotive Warehouse, Inc., a California corporation, and of Star Auto Parts, Inc., a California corporation, both debtors and debtors in possession in bankruptcy cases pending in the United States Bankruptcy Court for the Central District of California, case nos. 6:16-bk-10096 and 6:16-bk-10105, respectively (collectively, hereinafter referred to as the "Client" or the "Company").

A.    <u>Conditions.</u>

This Agreement will not take effect, and Pachulski will have no obligation to provide services, until Client returns a signed copy of this Agreement.

B.    <u>Scope of Services.</u>

Client hires Pachulski to serve as its Chief Restructuring Officer and provide the following services:

Pachulski will serve as the Chief Restructuring Officer (the "CRO") reporting directly to the Board of Directors. In the capacity of CRO, Mr. Pachulski will be an officer of the Company and will enjoy the same full and free access to the Board of Directors and its Committees as other members of the senior management of the Company as specified in the Corporate Governance Guidelines of the Board of Directors and, to the extent determined by the Board of Directors from time to time, will be granted the right to attend and participate (but not vote) in the meetings of the Company's Board of Directors, or its Committees, as an observer (it being understood that the Board of Directors of the Company may from time to time meet in "executive session" or otherwise ask that certain or all non-directors not attend such meeting or a portion thereof) (such role referred to as "Board Observer").

Pachulski will provide the Company restructuring management services and CRO services (the "Services") including, but not limited to the following:

1.    Lead efforts to facilitate the Debtor's restructuring and sale efforts;

2.    Lead management efforts to identify and implement both short-term and long-term liquidity generation and profit improvement in an effort to improve the ongoing viability of the Debtor;

3.    Participate in development of strategy to negotiate with key stakeholders in order to effectuate a capital raise, sale transaction, or restructuring.

4.    Assist with negotiations with the secured lenders and other parties, as appropriate, to facilitate restructuring efforts;

5.    Work with counsel to develop strategic solutions to address demands of divergent stakeholders;

6.    Assist the Debtor in identifying, reviewing and negotiating debtor in possession financing, if required;

7.    Assist the Company and its other advisors with the formulation of a chapter 11 plan of reorganization / liquidation and the preparation of the corresponding disclosure statement.

8.    Identify nonessential assets to be sold and managing the sale process;

9.    Attend meetings and court hearings as may be required;

10. Render expert testimony as requested from time to time;

11. In his capacity as CRO, Mr. Pachulski will not be a member of the Board of Directors, but he is expected to participate in Board meetings in order to report on the progress of the turnaround and restructuring initiatives; and,

12. Perform other duties and other services as mutually agreed to by Pachulski and the Debtor.

Pachulski will operate in the capacity of CRO under the protection of chapter 11 of the Bankruptcy Code. In his capacity as CRO, Pachulski will:

- Report directly to the Board of Directors of the Debtor and make recommendations thereto and consult therewith regarding his activities and the Services as discussed above.

- Work on a collaborative basis with senior executives of the Debtor, coordinate the restructuring efforts of the Debtor, subject to the reporting structure above, including the identification, development, and implementation of strategies related to the Debtor's debt obligations, business plan, and other related matters.

- In consultation with the Debtor's senior executives, coordinate and manage the Services as discussed above.

This Agreement does not cover representation, appearance or consultation by Pachulski for the Client in respect to other legal proceedings, cases, or matters other than as expressly set forth above, although Pachulski may elect to do so on the terms set forth herein if requested by the Client. By example only, this Agreement does not cover advice or services regarding, matters of taxation, labor, securities, ERISA, probate/estate planning, criminal, or other non-bankruptcy or non-debtor/creditor specialties.

Client agrees that Pachulski should not be expected to provide services or incur expenses without recompense and intends by this agreement to bind itself and any bankruptcy estate which may be a successor to its assets to pay Pachulski for its services and expenses. Client has been advised that there may exist case law indicating that Client's CRO cannot be recompensed from a chapter 7 estate of Client. In that regard, Client acknowledges that Pachulski is <u>not</u> presently agreeing to serve the Client if it becomes a debtor under chapter 7 of the Bankruptcy Code. Client agrees that Pachulski may withdraw in such instance. In any event, Client acknowledges that if Pachulski, nonetheless, provides any services or incurs expenses while Client is a debtor in a chapter 7 case, then, for the time of Pachulski and his expenses, Client (as well as any other benefited party) should be jointly liable for such services or expenses at Pachulski's then customary rates applicable in chapter 11 cases either based on this contract or under theories of *quantum meruit* (implied contracts for recompense at fair value).

C. <u>Client's Duties.</u>

Client agrees to be truthful with Pachulski, to cooperate, to keep Pachulski informed of any information or developments which may come to Client's attention, to abide by this Agreement, to pay Pachulski's bills on time, and to keep Pachulski advised of Client's address, telephone number and whereabouts. Client will assist Pachulski in providing necessary information and documents and will appear when necessary at legal proceedings.

D. <u>Fees and Billing Practices.</u>

1. <u>Negotiability of Fees and Obligation of Client.</u>

The rates set forth below are not set by law, but are negotiable between a professional and client. Thus, this written Agreement shall bind the parties, subject to the law. If reimbursement of expenses are

sought by Client from an opposing party, Client acknowledges that the denial of such request or the amount awarded shall not limit the compensation to which Pachulski is entitled hereunder.

2. Rates, Covered Services and Billing Increments.

Client agrees to pay by the hour at Pachulski's prevailing rates for all time spent on Client's matter by Pachulski. Pachulski's current hourly rate is $1,145.00. Client further agrees that Mr. Pachulski may delegate to any other person employed by Pachulski Stang Ziehl & Jones LLP ("PSZJ") tasks related to his Services, and Client agrees to pay by the hour at PSZJ's prevailing rates for all time spent on Client's matter by the Firm's personnel, so long as such rates do not exceed the then current hourly rate of Mr. Pachulski. Such rates periodically are increased. If Client declines to pay increased rates prior to incurrence of charges at such rates, Pachulski will have the right to withdraw as CRO for Client.

Time is charged in minimum units of one-tenth (.1) of an hour. The time charged will include the time Pachulski spends on telephone calls relating to Client's matter, including calls with Client, witnesses, counsel or court personnel. Pachulski will charge for waiting time in court and elsewhere and for travel time, both local and out of town.

The time for which Client will be billed includes not only time spent directly on analysis or the preparation and review of documents or at court or other hearings, but also travel time and time spent in conference (in telephone or in person) with representatives of the Client or others in respect to the matter of representation.

Client agrees that Pachulski is not an employee of the Client, and he shall not receive a W-2 from the Company for any fees earned under this Engagement, and such fees are not subject to any form of withholding by the Client. The Client shall provide Pachulski a standard form 1099 on request for fees earned under this Engagement.

3. Costs and Other Charges.

Pachulski will incur various costs and expenses in performing services under this Agreement. Client agrees to pay for all costs, disbursements and expenses in addition to the hourly fees.

(a) Generally. The attached exhibit reflects current charges for, *inter alia*, facsimile transmissions, in-house photocopying, reproduction and scan copying charges and mileage. Pachulski's other costs, including outside photocopy charges and research, will be passed through to the Client at cost. Besides those detailed below, other common costs and expenses are service of process charges, filing and other court fees, court and deposition reporters' fees, jury fees, notary fees, deposition costs, secretarial overtime, telephone charges, messenger and other delivery fees, postage, local travel costs including parking and mileage, investigation expenses, consultants' fees, professional, mediator, arbitrator and/or special master fees and other similar items.

(b) Out of town travel. Client agrees to pay the cost of transportation, meals, lodging and all other costs of any necessary out-of-town travel by Pachulski.

(c) Experts, Consultants and Investigators. To aid in the preparation or presentation of Client's case, it may become necessary to hire expert witnesses, consultants or investigators. Client agrees to pay such fees and charges at cost.

E. Billing Statements and Non-Payment or Untimely Payment.

Pachulski will send Client periodic statements for fees and costs incurred, typically monthly. Each statement will be payable upon receipt. Client may specifically request statements be issued at no less than monthly intervals. If a statement is not provided within 25 days after the end of a month, Client may request such statement and Pachulski will provide it within 20 days. The statements shall include

the amount, rate, basis of calculation or other method of determination of the fees and costs, which costs will be clearly identified by item and amount.

The Client is to pay such bills upon receipt and, if the Client does so, Pachulski would not intend to seek legal entitlement to anything more. In the event of late or non-payment, Pachulski has reserved the right to charge interest commencing 30 days after the initial billing at the lower of 10% per annum or the maximum nonusurious rate which could be charged under applicable law, as well as to resign, subject to court approval where necessary. If at any time the Client asks Pachulski to discontinue its work for the Client, Pachulski will do so and provide the Client with a final billing as rapidly as possible.

Pachulski contemplates, understands, and accepts that because the Client is a debtor in a proceeding under chapter 11, the obligation of the Client to pay the fees and expenses of Pachulski accruing during the chapter 11 may become subject to court approval.

Pachulski, however, reserves the right to seek to hold the Client <u>legally</u> <u>bound</u> to pay more, an amount in excess of charges for expenses and hourly fees and interest, if (1) the Client does <u>not</u> pay Pachulski in full either upon each billing or due to court or statutory limitations imposed in a chapter 11 proceeding in which the Client is the debtor or (2) if the Client later contends that Pachulski should be entitled to less than amounts billed hereunder.

If Pachulski is <u>not</u> paid in full upon billing, as is being bargained for, regardless of the reason therefor, Pachulski, essentially, is reserving the right to opt to treat this matter more like a contingency representation, *i.e.*, to have considered the following factors in determining Pachulski's monetary entitlement:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal services properly.

(2) The likelihood, if apparent to the Client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3) The fee customarily charged in the locality for similar legal services.

(4) The amount involved and the results obtained.

(5) The time limitations imposed by the Client or by the circumstances.

(6) The nature and length of the professional relationship of the Client.

(7) The experience, reputation and ability of the lawyer or lawyers performing the services.

(8) The economic risk of nonpayment faced by Pachulski.

Additionally, if and when debtor in possession financing is obtained by the Client, Pachulski may seek an appropriate carve-out in respect of the payment of fees and expenses incurred by Pachulski.

F. <u>Client's Limited Waiver of Any Confidentiality of this Retention Agreement and of Pachulski's Time and Expense Records.</u>

To the extent that Pachulski's ability to be employed or compensated requires it to permit a court or arbitrator to review this Agreement or its time and expenses records, the Client agrees that, in addition to any other disclosures of confidences or secrets permitted with the Client's consent, Pachulski may file with the court or arbitrator and serve on appropriate parties copies of this Agreement and its time and

expense records and may provide a narrative description of its services.  In connection therewith, Pachulski will endeavor, in good faith, to avoid unnecessary disclosures.

G.  Lien.

**R: CLIENT HEREBY GRANTS PACHULSKI A LIEN ON ANY AND ALL CLAIMS OR CAUSES OF ACTION THAT ARE THE SUBJECT OF THE REPRESENTATION UNDER THIS AGREEMENT. THE LIEN WILL BE FOR ANY SUMS OWING TO PACHULSKI AT THE CONCLUSION OF SERVICES PERFORMED. THE LIEN WILL ATTACH TO ANY RECOVERY CLIENT MAY OBTAIN, WHETHER BY ARBITRATION AWARD, JUDGMENT, SETTLEMENT OR OTHERWISE. THE EFFECT OF SUCH A LIEN IS THAT PACHULSKI MAY BE ABLE TO COMPEL PAYMENT OF FEES AND COSTS FROM ANY SUCH FUNDS RECOVERED ON BEHALF OF CLIENT EVEN IF PACHULSKI HAS BEEN DISCHARGED BEFORE THE END OF THE CASE. MOREOVER, TO SECURE ALL OF CLIENT'S OBLIGATIONS TO PACHULSKI ARISING NOW OR IN THE FUTURE, CLIENT ALSO HEREBY GRANTS PACHULSKI A SECURITY INTEREST IN: (1) THE DEPOSIT OR RETAINER AND ANY OTHER AMOUNTS PROVIDED TO PACHULSKI IN RESPECT OF FEES OR COSTS; AND (2) ANY PROPERTY OR PROCEEDS (EVEN IF NOT DENOMINATED A "RECOVERY") RESULTING FROM PROCEEDINGS OR SETTLEMENTS IN CONNECTION WITH WHICH PACHULSKI REPRESENTS OR REPRESENTED THE CLIENT. ALTHOUGH PACHULSKI BELIEVES THIS SECURITY INTEREST AND LIEN TO BE AUTOMATICALLY PERFECTED, CLIENT AGREES PROMPTLY TO PROCURE OR EXECUTE AND DELIVER OR FILE ANY DOCUMENT, INCLUDING WITHOUT LIMITATION A FINANCING STATEMENT, GIVE ANY NOTICES, AND TAKE ANY OTHER ACTIONS THAT PACHULSKI REASONABLY REQUESTS TO PERFECT OR CONTINUE THE PERFECTION AND PRIORITY OF PACHULSKI'S SECURITY INTEREST OR LIEN.**

**R:** Client's granting to Pachulski of a security interest and lien may result in the assets subject to the security interest or lien no longer being available to the Client.  Such assets may be, by example, foreclosed upon or taken by Pachulski to apply toward any unsatisfied obligations of Client under this agreement.  Because a lien may affect Client's property rights, Client may seek the advice of an independent lawyer of Client's choice before agreeing to such a lien.  By initialing this paragraph, Client represents and agrees that Client has had a reasonable opportunity to consult such an independent lawyer and—whether or not Client has chosen to consult such an independent lawyer—Client agrees that Pachulski will have a lien as specified above.

_____ (Client Initial Here)        _____ (Client Initial Here)        _____ (Pachulski Initial Here)

H.  Discharge and Withdrawal; Disposition of Files.

The Client may discharge Pachulski at any time.  Pachulski may withdraw as the Client's CRO with the Client's consent or for good cause.  Good cause includes the Client's breach of this Agreement, the Client's refusal to cooperate with Pachulski or to follow Pachulski's advice on a material matter or any fact or circumstance that would render Pachulski's continuing representation unlawful or unethical.  In any event, Pachulski may withdraw from representation of the Client upon Pachulski's determination of the existence of a conflict of interest.  When Pachulski's services conclude, all unpaid charges will immediately become due and payable.

During Client's representation by Pachulski, Pachulski will be maintaining a file that would contain original correspondence, evidence, pleadings and other documentation in tangible or electronic form, and may include original documents that have a legal effect, such as deeds or promissory notes.  Pachulski shall endeavor in good faith initially to retain all such material items related to this representation, subject to reasonable destruction policies for electronic and other data ("Client Files").

At any time, upon Client's request, Pachulski will deliver to the Client, its counsel or as the Client directs, the Client Files, subject to the terms of any protective order or non-disclosure agreement, (along with any funds, other than the deposit or retainer, or different types of property of the Client in Pachulski's possession unless subject to the lien provided in Section G above), whether or not Client has paid for all services.  If there are multiple clients, Pachulski may take direction as to Client Files or Client property from all clients, relevant clients or from such client or person as the clients have herein or otherwise agreed.  Client agrees to pay or reimburse Pachulski for all costs of copying the Client Files for Client and retaining a copy of the Client File for Pachulski's records, agrees to such retention and acknowledges that

Pachulski may also retain all of its work product. Whether or not such payment or reimbursement obligation arises after Pachulski's representation of Client has ended, it shall constitute part of the payment due to Pachulski hereunder for services already rendered.

After the matter or Pachulski's services for Client has concluded, Client Files related to a matter may be destroyed by Pachulski after a reasonable period of time, which reasonable period shall be deemed to be no longer than eighteen (18) months from the earlier of the time the matter ends or services conclude. While the foregoing sets forth Pachulski's obligations, please note that Pachulski presently has a records retention policy pursuant to which (1) Pachulski actually will endeavor to retain for a period of five years from the date services conclude Client Files that are not transferred to Client and are no longer needed for legal and/or business purposes, (2) Pachulski may absorb certain of the related copy charges, and (3) Client Files would be destroyed after the 5-year period. Although Pachulski presently has such a policy, and, as a courtesy, may endeavor to reiterate this policy at the time services conclude, failure to adhere to the policy or give subsequent notice thereof to Client shall not alter, extend or expand the obligations to Client hereunder with respect to Client Files.

I.    <u>Disclosure of Representations.</u>

Based on the information, Pachulski has received to date, it is not aware of any current or past relationship with another party interested in the subject matter of this representation that would constitute a conflict of interest, nor does Pachulski itself have an interest in the subject matter of the representation. However, in order to avoid representing parties with conflicts of interest, Pachulski maintains a computerized conflict of interest index. **Client agrees to provide Pachulski with a comprehensive list of Client's creditors, if client is a debtor, client's debtors, if client is a creditor or counter parties or litigants if client is engaged in a transaction or litigation.**

Pachulski will utilize the list to comply with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules to be sure that Pachulski is "disinterested" and is in a position to make all required disclosures to a Bankruptcy Court.

J.    <u>Permission to Represent Adverse Parties In Allowed Adverse Representations.</u>

Client acknowledges that Pachulski has represented, now represents, and will continue to represent numerous clients (which may include, without limitation, Client's or its affiliates' debtors, creditors, and direct competitors) over a wide range of industries and businesses and in a wide variety of matters. Given this, without a binding conflicts waiver, conflicts of interest might arise that could deprive Client or other clients of the right to select Pachulski as their counsel. Thus, as an integral part of the engagement, Client agrees to, and is providing, the following blanket advance written waiver and acknowledgments: (1) Pachulski may, now or in the future, represent other entities or persons, including in litigation, adverse to Client or any affiliate on matters that are not substantially related to (a) the services that Pachulski has rendered, is rendering, or in the future will render to Client under the engagement or (b) other services that Pachulski has rendered, is rendering, or in the future will render to Client or any affiliate (an "Allowed Adverse Representation"); (2) Client will not, for itself or any other entity or person, assert that either (a) Pachulski's representation of Client or any affiliate in any past, present, or future matter or (b) Pachulski's actual, or possible, possession of confidential information belonging to Client or any affiliate is a basis to disqualify Pachulski from representing another entity or person in any Allowed Adverse Representation; (3) any Allowed Adverse Representation does not breach any duty that Pachulski owes to Client or any affiliate; and (4) an Allowed Adverse Representation will not undermine or impair the relationship between the Client and Pachulski with respect to Pachulski's representation of Client. Client understands that Pachulski has a duty of loyalty to it and that in certain jurisdictions Client's informed written consent may be required for Pachulski to be adverse to Client even in an unrelated matter. Nonetheless, to secure Pachulski's representation of Client and permit Pachulski to represent others in Allowed Adverse Representations, Client agrees to the foregoing. In the event that Client hereafter comes to believe that there is any impairment of its relationship with Pachulski due to an Allowed Adverse Representation, including as to Pachulski's loyalty to Client's interests in its

representation, Client will notify Pachulski, retain new counsel and not seek to disqualify Pachulski in any Allowed Adverse Representation.

K.      <u>Indemnification and Insurance</u>

Subject to any limitation post-petition required by the Bankruptcy Court, the Company agrees to indemnify and hold harmless Pachulski and individuals he delegates to perform Services of the CRO (each, an "Indemnified Party") from and against any losses, claims, damages or expenses, or if same was or is or becomes a party to or witness or other participant in, or is threatened to be made a party to or witness or other participant in, any threatened, pending or completed action, suit, proceeding or alternative dispute resolution mechanism, or any hearing, inquiry or investigation, in each case by reason of (or arising in part out of) any event or occurrence related to this agreement or any predecessor agreement for services or the fact that any Indemnified Party is or was an agent, officer director, employee or fiduciary of the Company, or by reason of any action or inaction on the part of any Indemnified Party while serving in such capacity (an "Indemnifiable Event") against expenses (including reasonable attorneys' fees and disbursements), judgments, fmes, settlements and other amounts actually and reasonably incurred in connection with any Indemnifiable Event. The Application shall include the assumption by the Company of Pachulski's right to indemnification in respect of its actions under this Agreement prior to the Petition Date. The Indemnified Party shall promptly forward to the Company all written notifications and other matter communications regarding any claim that could trigger the Company's indemnification obligations under this Section 6. If the Company so elects or is requested by an Indemnified Party, the Company will assume the defense of such action or proceeding, including the employment of counsel reasonably satisfactory to the Indemnified Party and the payment of the reasonable fees and disbursements of such counsel. In the event, however, such Indemnified Party is advised by counsel that having common counsel would present such counsel with a conflict of interest or if the defendants in, or targets of, any such action or proceeding include both an Indemnified Party and the Company, and such Indemnified Party is advised by counsel that there may be legal defenses available to it or other Indemnified Parties that are different from or in addition to those available to the Company, or if the Company fails to assume the defense of the action or proceeding or to employ counsel reasonably satisfactory to such Indemnified Party, in either case in a timely manner, then such Indemnified Party may employ separate counsel to represent or defend it in any such action or proceeding and the Company will pay the reasonable fees and disbursements of such counsel; provided, however, that the Company will not be required to pay the fees and disbursements of more than one separate counsel (in addition to local counsel) for an Indemnified Party in any jurisdiction in any single action or proceeding. In any action or proceeding the defense of which the Company assumes, the Indemnified Party will have the right to participate in such litigation and to retain its own counsel at such Indemnified Party's own expense. The Company further agrees that the Company will not, without the prior written consent of the Indemnified Party (which consent shall not be unreasonably withheld or delayed), settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which indemnification or contribution may be sought hereunder (whether or not the Indemnified Party or any other Indemnified Party is an actual or potential party to such claim, action, suit or proceeding) unless (i) to the extent that such settlement, compromise or consent purports directly or indirectly to cover the Indemnified Party or any other Indemnified Party, such settlement, compromise or consent includes an unconditional release of the Indemnified Party and each other Indemnified Party from all liability arising out of such claim, action, suit or proceeding, or (ii) to the extent that such settlement, compromise or consent does not purport directly or indirectly to cover the Indemnified Party or any other Indemnified Party, the Company has given the Indemnified Party reasonable prior written notice thereof and used all reasonable efforts, after consultation with the Indemnified Party, to obtain an unconditional release of the other Indemnified Parties hereunder from all liability arising from all liability arising out of such claim, action, suit or proceeding. The Indemnified Party shall not enter into any closing agreement or final settlement that could trigger the Company's indemnification obligations under this Section 6 without the written consent of the Company, which shall not unreasonably be withheld or delayed or conditioned. The Company will not be liable for any settlement of any action, claim, suit or proceeding affected without the Company's prior written consent, which consent shall not be unreasonably withheld or delayed or conditioned, but if settled with the consent of the Company or if there be a fmal judgment for the plaintiff, the Company agrees to indemnify

Exhibit 1, Page 12

and hold harmless the Indemnified Party from and against any loss or liability by reason of such settlement or judgment, as the case may be.

This indemnity shall not apply to any portion of any such losses, claims, damages, liabilities and expenses to the extent it is found in a final judgment by a court of competent jurisdiction to have resulted primarily from the bad faith, gross negligence, willful misconduct or violation of law of any such Indemnified Party. The Company agrees to use commercially reasonable best efforts to (i) include Mr. Pachulski, and individuals he delegates to assume officer or director positions with the Company or who perform Services hereunder, as insureds under the Company's directors and officers insurance; and (ii) unless it is unable to do so at a commercially reasonable cost, purchase a three-year directors and officers insurance "tail" or runoff policy (or such a policy for such shorter period as Company has the right to or is otherwise able to purchase) covering the period of Pachulski's service. In connection with this engagement Company represents to Pachulski that Company hereby represents that (i) it has timely remitted and will continue to timely remit to the appropriate beneficiaries all employee source deductions, payroll and other taxes, benefits deductions, and contribution to employee benefit programs, and has timely collected and remitted sales and use and other similar taxes to appropriate collecting authorities and will continue timely to do so; (ii) there is no litigation or other proceeding pending, or to knowledge of Company, threatened (nor is Company aware of facts that could give rise to such), in each case that seeks or could give rise to personal liability of officers and directors of Company; and (iii) Company has been in continuing compliance with all applicable laws and regulations concerning the discharge, treatment, storage, transportation or use of hazardous materials and is aware of no facts or circumstances that could give rise to Company responsibility or liability under such laws and regulations.

L.     Limitation of liability

You and the Company agree that no Indemnified Person shall have any liability as a result of your retention of Pachulski, the execution and delivery of this Engagement Contract, the provision of Services or other matters relating to or arising from this Engagement Contract, other than liabilities that shall have been determined by final non-appealable order of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of an Indemnified Person or Persons. Without limiting the generality of the foregoing, in no event shall any Indemnified Person be liable for consequential, indirect or punitive damages, damages for lost profits or opportunities or other like damages or claims of any kind.

M.    Arbitration.

CLIENT MAY BE ENTITLED TO ARBITRATE CERTAIN MATTERS PURSUANT TO CHAPTER 4, ARTICLE 13 OF THE CALIFORNIA BUSINESS AND PROFESSIONS CODE.  OTHERWISE, IF ANY DISPUTE ARISES OUT OF, OR RELATES TO, A CLAIMED BREACH OF THIS AGREEMENT, THE PROFESSIONAL SERVICES RENDERED BY PACHULSKI, OR CLIENT'S FAILURE TO PAY FEES FOR PROFESSIONAL SERVICES AND OTHER EXPENSES SPECIFIED, OR ANY OTHER DISAGREEMENT OF ANY NATURE, TYPE OR DESCRIPTION REGARDLESS OF THE FACTS OR THE LEGAL THEORIES WHICH MAY BE INVOLVED, SUCH DISPUTE SHALL BE RESOLVED BY ARBITRATION BEFORE THE AMERICAN ARBITRATION ASSOCIATION BY A SINGLE ARBITRATOR IN ACCORDANCE WITH THE COMMERCIAL RULES OF THE AMERICAN ARBITRATION ASSOCIATION IN EFFECT AT THE TIME THE PROCEEDING IS INITIATED.  THE HEARINGS SHALL BE HELD IN THE LOS ANGELES OFFICES OF THE AMERICAN ARBITRATION ASSOCIATION AND EACH SIDE SHALL BEAR HIS/HER/ITS OWN COSTS AND ATTORNEY FEES.  UNDER THIS PROVISION, CLIENT WOULD NOT HAVE THE RIGHT TO, AND IS WAIVING ANY RIGHT TO, A JURY TRIAL IN RESPECT TO A MALPRACTICE CLAIM AGAINST PACHULSKI.  IF THE CLIENT OR FIRM OPPOSE ARBITRATION BASED ON CAL. CIV. PROC. CODE §1281.2(c) OR ANY LAW OF SIMILAR SUBSTANCE OR EFFECT (*i.e.*, BASED ON THE PENDENCY OF A PROCEEDING INVOLVING A THIRD PARTY THAT COULD RESULT IN CONFLICTING RULING), THE PARTY OPPOSING ARBITRATION HEREUNDER SHALL BE DEEMED TO CONSENT TO A JOINT ARBITRATION HEREUNDER OF SUCH OTHER DISPUTE.  IF CLIENT AGREES HERETO AND ARBITRATION OCCURS, (1) CLIENT LIKELY WOULD HAVE TO PAY SIGNIFICANLTY HIGHER COSTS AND ATTORNEY'S FEES THAN THE COSTS OF PAYING FILING FEES FOR A COURT PROCEEDING;

AND (2) CLIENT WOULD NOT HAVE ACCESS TO ANY FEE WAIVER OR REDUCTION PROCEDURE THAT MAY BE AVAILABLE IN COURT PROCEEDINGS, SUCH AS FOR CONSUMERS.

PACHULSKI OFTEN REPRESENTS CONSTITUENCIES IN BANKRUPTCY AND IN MANY OF THOSE CASES ITS FEES AND EXPENSES AND THEIR PAYMENT ARE SUBJECT TO COURT APPROVAL. IN SUCH CASES, PACHULSKI'S ENTITLEMENT TO FEES OR EXPENSES, DETERMINATION OF THEIR AMOUNT, AND COMPULSION OR PERMISSION FOR THEIR PAYMENT SHALL NOT BE SUBJECT TO ARBITRATION TO THE EXTENT THAT THE COURT WITH JURISDICTION OVER THE BANKRUPTCY CASE IS AN AVAILABLE FORUM IN WHICH TO RESOLVE SUCH ISSUES.

N.  <u>Disclaimer of Guarantee and Estimates.</u>

Nothing in this Agreement and nothing in Pachulski's statements to Client will be construed as a promise or guarantee about the outcome of the matter. Pachulski makes no such promises or guarantees. Pachulski's comments about the outcome of the matter are expressions of opinion only. Any estimate of fees given by Pachulski shall not be a guarantee. Actual fees may vary from estimates given.

O.  <u>Entire Agreement; No Third Party Beneficiaries.</u>

This Agreement contains the entire agreement of the parties. No other agreement, statement, or promise made on or before the effective date of this Agreement will be binding on the parties and this Agreement is not intended to confer upon any person other than Pachulski and Client any rights or remedies.

P.  <u>Binding Nature of Agreement.</u>

This Agreement shall be binding upon and inure to the benefit of Pachulski and Client.

Q.  <u>Severability in Event of Partial Invalidity.</u>

If any provision of this Agreement is held in whole or in part to be unenforceable for any reason, the remainder of that provision and of the entire Agreement will be severable and remain in effect.

R.  <u>Modification by Subsequent Agreement.</u>

This Agreement may be modified by subsequent agreement of the parties only by an instrument in writing signed by both of them, or an oral agreement only to the extent that the parties carry it out.

S.  <u>Miscellaneous Matters.</u>

Pachulski is being engaged by the Client, being the individual(s), entity or entities for which appear below signature blocks (other than the signature block for Pachulski).

The validity of this Agreement, its construction, interpretation, and enforcement, and the rights of the parties hereto shall be determined under, governed by, and construed in accordance with the internal laws of the State of California, without regard to principles of conflicts of law.

This Agreement may be executed by the signatories through use of multiple copies of the signature pages.

Client acknowledges having received a signed duplicate copy hereof for Client to keep for its own records.

T.  <u>Effective Date.</u>

      This Agreement will govern all legal services performed by Pachulski on behalf of Client commencing with the date Pachulski first performed services.  The date at the beginning of this Agreement is for reference only.  Even if this Agreement does not take effect, Client will be obligated to pay Pachulski the reasonable value of any services Pachulski may have performed for Client.

      THE PARTIES HAVE READ AND UNDERSTOOD THE FOREGOING TERMS AND AGREE TO THEM AS OF THE DATE PACHULSKI FIRST PROVIDED SERVICES.  IF MORE THAN ONE CLIENT SIGNS BELOW, EACH AGREES TO BE LIABLE, JOINTLY AND SEVERALLY, FOR ALL OBLIGATIONS UNDER THIS AGREEMENT.

      CLIENT SHOULD SEEK INDEPENDENT COUNSEL TO ADVISE IT CONCERNING THIS AGREEMENT.

Dated:  January 8, 2016

| RICHARD PACHULSKI | STAR AUTO PARTS, INC. |
|---|---|
| By:_____ | By:_____<br>    _____(Print Name)<br>    _____(Title) |

METROPOLITAN AUTOMOTIVE
WAREHOUSE, INC.

By:_____
    _____(Print Name)
    _____(Title)

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 660 Newport Center Drive, 4th Floor, Newport Beach, CA 92660.

A true and correct copy of the foregoing document entitled: **DECLARATION OF RICHARD M. PACHULSKI IN SUPPORT OF DEBTOR'S MOTION FOR ENTRY OF ORDER PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE APPROVING THE ENGAGEMENT CONTRACT OF RICHARD M. PACHULSKI AS CHIEF RESTRUCTURING OFFICER OF THE DEBTOR, NUNC PRO TUNC TO THE PETITION DATE** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On January 8, 2016, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Harold L Collins    halc@knfilters.com, hcollinslaw@aol.com
- Everett L Green    everett.l.green@usdoj.gov
- James A Hayes    jhayes@jamesahayesaplc.com
- Garrick A Hollander    ghollander@winthropcouchot.com, pj@winthropcouchot.com;vcorbin@winthropcouchot.com;mconour@winthropcouchot.com
- Gregory K Jones    GJones@dykema.com, CPerez@dykema.com
- Alan I Nahmias    anahmias@mbnlawyers.com, jdale@mirmanbubman.com
- Daniel H Reiss    dhr@lnbyb.com, dhr@ecf.inforuptcy.com
- United States Trustee (RS)    ustpregion16.rs.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On January 8, 2016, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on January 8, 2016, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Via Attorney Service [Bin outside of Courtroom 304]
Honorable Wayne Johnson
3420 Twelfth St., Suite 384
Riverside, CA 92501-3819

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 8, 2016 | Viann Corbin | /s/ Viann Corbin |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |