GARRICK A. HOLLANDER – State Bar No. 166316
ghollander@winthropcouchot.com
PETER W. LIANIDES – State Bar No. 160517
plianides@winthropcouchot.com
JEANNIE KIM – State Bar No. 270713
jkim@winthropcouchot.com
**WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**
660 Newport Center Drive, Fourth Floor
Newport Beach, CA 92660
Telephone: (949) 720-4100
Facsimile: (949) 720-4111

[Proposed] General Insolvency Counsel for
Debtor and Debtor-in-Possession

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

RIVERSIDE DIVISION

| | |
|---|---|
| In re:<br><br>METROPOLITAN AUTOMOTIVE WAREHOUSE, INC., a California corporation,<br><br>Debtor and<br>Debtor-in-Possession. | Case No. 6:16-bk-10096 WJ<br><br>Chapter 11 Proceeding<br><br>**SUPPLEMENT TO MOTION FOR ENTRY OF ORDER PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE APPROVING THE ENGAGEMENT CONTRACT OF RICHARD M. PACHULSKI AS CHIEF RESTRUCTURING OFFICER OF THE DEBTOR, NUNC PRO TUNC TO THE PETITION DATE; DECLARATION OF RONALD TURNER IN SUPPORT THEREOF**<br><br>DATE: January 26, 2016<br>TIME: 2:00 p.m.<br>PLACE: Courtroom 304<br>3420 Twelfth Street<br>Riverside, California 92501 |

**TO THE HONORABLE WAYNE E. JOHNSON, UNITED STATES BANKRUPTCY JUDGE AND PARTIES IN INTEREST:**

Metropolitan Auto Warehouse, Inc., debtor and debtor-in-possession (the "Debtor"), hereby supplements its motion for an order approving the engagement contract with Richard M. Pachulski as Chief Restructuring Officer (the "Motion") to reflect revisions to the Engagement Contract. A true and correct copy of the revised Engagement Contract is attached as Exhibit "1" to the Declaration of Ronald Turner appended hereto and incorporated herein by this reference. The primary substantive change to the revised Engagement Contract reflects a termination provision. In particular, the Engagement Contract provides for the following relative to termination:

- The employment of Mr. Pachulski as Chief Restructuring Officer for the Debtor may only be terminated by the Debtor for cause pursuant to court order following a noticed motion filed in the cases that establishes cause for termination.
- Mr. Pachulski's services under the Engagement Contract may be terminated by Mr. Pachulski, at will, effective no less than thirty (30) days following filing of written notice in the cases. Such notice by Mr. Pachulski shall be served on the Debtor, Debtor's bankruptcy counsel, the United States Trustee and counsel for the official committee of unsecured creditors, if any, at their respective addresses on file in the cases.
- The Engagement Contract shall be terminated upon entry of an order in the cases (i) converting the bankruptcy case to case under Chapter 7 or (ii) appointing a trustee. In the event of the termination of the Engagement Contract, Mr. Pachulski shall be entitled to all compensation and expenses accruing through the effective date of the termination.

DATED: January 14, 2016            **WINTHROP COUCHOT**
                                                     **PROFESSIONAL CORPORATION**

                                                     By:   */s/ Garrick A. Hollander*
                                                           Garrick A. Hollander
                                                           Peter W. Lianides
                                                           Jeannie Kim
                                                          [Proposed] General Insolvency Counsel for
                                                          Debtor and Debtor-In-Possession

## DECLARATION OF RONALD TURNER

I, Ronald Turner, declare and state as follows:

1. I am the President of Metropolitan Automotive Warehouse, Inc., debtor and debtor-in-possession. I have personal knowledge of the facts set forth herein, and if called upon to testify, could and would do so competently and truthfully.

2. Richard M. Pachulski has revised his Engagement Contract. A true and correct copy of the revised Engagement Contract is attached hereto as Exhibit "1" and incorporated herein by this reference. The primary substantive change to the revised Engagement Contract reflects a termination provision.

Executed this 14th day of January, 2016, at San Bernardino, California.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Ronald Turner

# **Exhibit "1"**

## ENGAGEMENT CONTRACT

This Agreement sets forth the terms of the retention of Richard M. Pachulski ("Pachulski") to serve as Chief Restructuring Officer ("CRO") of Metropolitan Automotive Warehouse, Inc., a California corporation, and of Star Auto Parts, Inc., a California corporation, both debtors and debtors in possession in bankruptcy cases (the "Cases") pending in the United States Bankruptcy Court for the Central District of California, case nos. 6:16-bk-10096 and 6:16-bk-10105, respectively (each a "Company" and collectively, the "Companies").

A.   Conditions.

This Agreement will not take effect, and Pachulski will have no obligation to provide services, until each Company returns a signed copy of this Agreement.

B.   Scope of Services.

Each Company hires Pachulski to serve as its CRO and provide the Services described below. Pachulski may from time to use the services of personnel at Pachulski Stang Ziehl & Jones LLP ("PSZJ"), including attorneys, to assist him in the performance of the obligations of this Agreement.

Pachulski will serve as the CRO reporting directly to the Board of Directors. In the capacity of CRO, Mr. Pachulski will be an officer of each Company and will enjoy the same full and free access to the Board of Directors and its Committees as other members of the senior management of each Company and, to the extent determined by the Board of Directors from time to time, will be granted the right to attend and participate (but not vote) in the meetings of each Company's Board of Directors, or its Committees, as an observer (it being understood that the Board of Directors of each Company may from time to time meet in "executive session" or otherwise ask that certain or all non-directors not attend such meeting or a portion thereof).

Pachulski will provide the Companies restructuring management services and CRO services (the "Services") including, but not limited to the following:

1.   Lead efforts to facilitate the Companies' restructuring and sale efforts;

2.   Lead management efforts to identify and implement both short-term and long-term liquidity generation and profit improvement in an effort to improve the ongoing viability of the Companies;

3.   Participate in development of strategy to negotiate with key stakeholders in order to effectuate a capital raise, sale transaction, or restructuring.

4.   Assist with negotiations with the secured lenders and other parties, as appropriate, to facilitate restructuring efforts;

5.   Work with counsel to develop strategic solutions to address demands of divergent stakeholders;

6.   Assist the Companies in identifying, reviewing and negotiating debtor in possession financing, if required;

7.   Assist the Companies and their other advisors with the formulation of a chapter 11 plan of reorganization / liquidation and the preparation of the corresponding disclosure statement.

8.   Identify nonessential assets to be sold and managing the sale process;

9.   Attend meetings and court hearings as may be required;

10.  Render expert testimony as requested from time to time;

11. In his capacity as CRO, Mr. Pachulski will not be a member of the Board of Directors, but he may participate in Board meetings in order to report on the progress of the turnaround and restructuring initiatives; and,

12. Perform other duties and other services as mutually agreed to by Pachulski and each Company.

In his capacity as CRO, Pachulski will:

- Report directly to the Board of Directors of each Company and make recommendations thereto and consult therewith regarding his activities and the Services as discussed above.

- Work on a collaborative basis with senior executives of each Company, coordinate the restructuring efforts of each Company, subject to the reporting structure above, including the identification, development, and implementation of strategies related to each Company's debt obligations, business plan, and other related matters.

- In consultation with each Company's senior executives, coordinate and manage the Services as discussed above.

- Pachulski may use the services of personnel at PSZJ, including the legal services of PSZJ attorneys, to assist him in the performance of the obligations of this Agreement.

Each Company agrees that this Agreement shall not and is not intended to prevent PSZJ from expanding its services to represent either of the Companies as special counsel in the Cases. If requested by one of the Companies, PSZJ may seek court authority in the Cases under 11 U.S.C. Section 327(e) to expand the scope of its services to the Companies.

C. <u>Companies' Duties.</u>

Each Company agrees to be truthful with Pachulski, to cooperate, to keep Pachulski informed of any information or developments which may come to the Company's attention, to abide by this Agreement and to pay Pachulski's bills on time.

The Companies agree to provide complete and reasonably prompt access to their respective books, records, personnel and other information reasonably requested by Pachulski. In addition, Pachulski shall be granted reasonable access to the Companies' offices, computers, printers, fax machines and other business machines, office supplies and staff personnel only in the performance of his obligations under this Agreement. The Companies shall provide such access and use to Pachulski free of charge. If Pachulski reasonably believes that outside service providers for certain office functions (such as photocopying, printing and delivery services) are required, then Pachulski may request that the Companies pay such costs directly to such service providers. Such request shall be granted at the sole discretion of the Companies; provided, however, that such request may not be unreasonably withheld.

D.  **Fees and Billing Practices.**

   1.  **Rates, Covered Services and Billing Increments.**

   Each Company agrees to pay by the hour the prevailing rates for all time spent on Company's matter by Pachulski and PSZJ employees to whom he delegates tasks. Pachulski's current hourly rate is $1,145.00. Each Company further agrees that Mr. Pachulski may delegate to any other person employed by PSZJ tasks related to his Services, and each Company agrees to pay by the hour at PSZJ's prevailing rates for all time spent on Company's matter by PSZJ personnel, including attorneys, so long as such rates do not exceed the then current hourly rate of Mr. Pachulski. Such rates periodically are increased. If a Company declines to pay increased rates prior to incurrence of charges at such rates, Pachulski will have the right to withdraw as CRO for such Company.

   Time is charged in minimum units of one-tenth (.1) of an hour. The time charged will include the time Pachulski spends on telephone calls relating to the Companies' matters. Pachulski and his delegates will charge for waiting time in court and elsewhere and for travel time, both local and out of town.

   Each Company agrees that neither Pachulski nor his delegates is an employee of either Company, and they shall not receive a W-2 from the Companies for any fees earned under this Engagement, and such fees are not subject to any form of withholding by the Companies. Each Company shall provide Pachulski a standard form 1099 on request for fees earned under this Engagement.

   2.  **Costs and Other Charges.**

   Pachulski will incur various costs and expenses in performing services under this Agreement. The Companies agree to pay for all costs, disbursements and expenses in addition to the hourly fees. The Companies agree to pay the cost of transportation, meals, lodging and all other costs of any necessary out-of-town travel by Pachulski and his delegates

E.  **Billing Statements and Non-Payment or Untimely Payment.**

   Pachulski will send the Companies periodic statements for fees and costs incurred, typically monthly. Because many of the Services will pertain to both of the Companies, Pachulski will prepare joint statements for the Companies rather than separate statements for each Company. Each statement will be payable upon receipt. If a statement is not provided within 25 days after the end of a month, the Companies may request such statement and Pachulski will provide it within 20 days. The statements shall include the amount, rate, basis of calculation or other method of determination of the fees and costs, which costs will be clearly identified by item and amount.

   The Companies are to pay such bills upon receipt. If at any time the Companies ask Pachulski to discontinue its work for a Company, Pachulski will do so and provide the Companies with a final billing as rapidly as possible.

   Pachulski contemplates, understands, and accepts that because the Companies are debtors in proceedings under chapter 11, the obligation of the Companies to pay the fees and expenses of Pachulski accruing during the chapter 11 may become subject to court approval.

   Additionally, if and when debtor in possession financing is obtained by either Company, Pachulski may seek an appropriate carve-out in respect of the payment of fees and expenses he incurred.

F.  Discharge and Withdrawal

The employment of Pachulski as CRO for the Companies may only be terminated by the Companies for cause pursuant to court order following a noticed motion filed in the Cases that establishes cause for termination.

Pachulski's services under this Agreement may be terminated by Pachulski, at will, effective no less than thirty (30) days following filing of written notice in the Cases. Such notice by Pachulski shall be served on the Companies, Companies' bankruptcy counsel, the United States Trustee and counsel for the official committee of unsecured creditors, if any, at their respective addresses on file in the Cases.

In addition, this Agreement shall be terminated upon entry of an order in the Cases (i) converting the Bankruptcy Case to case under Chapter 7 or (ii) appointing a trustee. In the event of the termination of this Agreement, Pachulski shall be entitled to all compensation and expenses accruing through the effective date of the termination.

G.  Disclosure of Representations.

Based on the information Pachulski has received to date, he is not aware of any current or past relationship with another party interested in the subject matter of this engagement that would constitute a conflict of interest, nor does Pachulski itself have an interest in the subject matter of the engagement.

H.  Indemnification and Insurance

Subject to any limitation required by the Bankruptcy Court, each Company agrees to indemnify and hold harmless Pachulski and individuals he delegates to perform Services of the CRO (each, an "Indemnified Party") from and against any losses, claims, damages or expenses, or if same was or is or becomes a party to or witness or other participant in, or is threatened to be made a party to or witness or other participant in, any threatened, pending or completed action, suit, proceeding or alternative dispute resolution mechanism, or any hearing, inquiry or investigation, in each case by reason of (or arising in part out of) any event or occurrence related to this agreement or any predecessor agreement for services or the fact that any Indemnified Party is or was an agent, officer director, employee or fiduciary of each Company, or by reason of any action or inaction on the part of any Indemnified Party while serving in such capacity (an "Indemnifiable Event") against expenses (including reasonable attorneys' fees and disbursements), judgments, fines, settlements and other amounts actually and reasonably incurred in connection with any Indemnifiable Event. The Indemnified Party shall promptly forward to the Company all written notifications and other matter communications regarding any claim that could trigger a Company's indemnification obligations under this Section H. If the Company so elects or is requested by an Indemnified Party, the Company will assume the defense of such action or proceeding, including the employment of counsel reasonably satisfactory to the Indemnified Party and the payment of the reasonable fees and disbursements of such counsel. In the event, however, such Indemnified Party is advised by counsel that having common counsel would present such counsel with a conflict of interest or if the defendants in, or targets of, any such action or proceeding include both an Indemnified Party and the Company, and such Indemnified Party is advised by counsel that there may be legal defenses available to it or other Indemnified Parties that are different from or in addition to those available to the Company, or if the Company fails to assume the defense of the action or proceeding or to employ counsel reasonably satisfactory to such Indemnified Party, in either case in a timely manner, then such Indemnified Party may employ separate counsel to represent or defend it in any such action or proceeding and the Company will pay the reasonable fees and disbursements of such counsel; provided, however, that the Company will not be required to pay the fees and disbursements of more than one separate counsel (in addition to local counsel) for an Indemnified Party in any jurisdiction in any single action or proceeding. In any action or proceeding the defense of which the Company assumes, the Indemnified Party will have the right to participate in such litigation and to retain its own counsel at such Indemnified Party's own expense. Each Company further agrees that it will not, without the prior written consent of the Indemnified Party (which consent shall not be unreasonably withheld or delayed), settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which indemnification or contribution may be sought hereunder (whether or not the Indemnified Party or any other Indemnified Party is an actual or potential party to such claim, action, suit or proceeding) unless (i) to the extent that such settlement, compromise or consent purports directly or indirectly to

DOCS_LA:295708.4                                  4

cover the Indemnified Party or any other Indemnified Party, such settlement, compromise or consent includes an unconditional release of the Indemnified Party and each other Indemnified Party from all liability arising out of such claim, action, suit or proceeding, or (ii) to the extent that such settlement, compromise or consent does not purport directly or indirectly to cover the Indemnified Party or any other Indemnified Party, the Company has given the Indemnified Party reasonable prior written notice thereof and used all reasonable efforts, after consultation with the Indemnified Party, to obtain an unconditional release of the other Indemnified Parties hereunder from all liability arising from all liability arising out of such claim, action, suit or proceeding. The Indemnified Party shall not enter into any closing agreement or final settlement that could trigger the Company's indemnification obligations under this Section H without the written consent of the Company, which shall not unreasonably be withheld or delayed or conditioned. Each Company will not be liable for any settlement of any action, claim, suit or proceeding affected without the Company's prior written consent, which consent shall not be unreasonably withheld or delayed or conditioned, but if settled with the consent of the Company or if there be a formal judgment for the plaintiff, the Company agrees to indemnify and hold harmless the Indemnified Party from and against any loss or liability by reason of such settlement or judgment, as the case may be.

This indemnity shall not apply to any portion of any such losses, claims, damages, liabilities and expenses to the extent it is found in a final judgment by a court of competent jurisdiction to have resulted primarily from the bad faith, gross negligence, willful misconduct or violation of law of any such Indemnified Party. Each Company agrees to use commercially reasonable best efforts to (i) include Mr. Pachulski, and individuals he delegates to assume officer or director positions with the Company or who perform Services hereunder, as insureds under the Company's directors and officers insurance; and (ii) unless it is unable to do so at a commercially reasonable cost, purchase a three-year directors and officers insurance "tail" or runoff policy (or such a policy for such shorter period as Company has the right to or is otherwise able to purchase) covering the period of Pachulski's service. In connection with this engagement Company represents to Pachulski that Company hereby represents that (i) it has timely remitted and will continue to timely remit to the appropriate beneficiaries all employee source deductions, payroll and other taxes, benefits deductions, and contribution to employee benefit programs, and has timely collected and remitted sales and use and other similar taxes to appropriate collecting authorities and will continue timely to do so; (ii) there is no litigation or other proceeding pending, or to knowledge of Company, threatened (nor is Company aware of facts that could give rise to such), in each case that seeks or could give rise to personal liability of officers and directors of Company; and (iii) Company has been in continuing compliance with all applicable laws and regulations concerning the discharge, treatment, storage, transportation or use of hazardous materials and is aware of no facts or circumstances that could give rise to Company responsibility or liability under such laws and regulations.

I.    Limitation of liability

The Companies and Pachulski agree that no Indemnified Person shall have any liability as a result of the Companies' retention of Pachulski, the execution and delivery of this Agreement, the provision of Services or other matters relating to or arising from this Agreement, other than liabilities that shall have been determined by final non-appealable order of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of an Indemnified Person or Persons. Without limiting the generality of the foregoing, in no event shall any Indemnified Person be liable for consequential, indirect or punitive damages, damages for lost profits or opportunities or other like damages or claims of any kind.

J.    Disclaimer of Guarantee and Estimates.

Nothing in this Agreement and nothing in Pachulski's statements to the Companies will be construed as a promise or guarantee about the outcome of the matter. Pachulski makes no such promises or guarantees. Pachulski's comments about the outcome of the matter are expressions of opinion only.

K.    Entire Agreement; No Third Party Beneficiaries.

This Agreement contains the entire agreement of the parties. No other agreement, statement, or promise made on or before the effective date of this Agreement will be binding on the parties and this Agreement is not intended to confer upon any person other than Pachulski and the Companies any rights or remedies.

DOCS_LA:295708.4                                5

Exhibit 1, Page 8

L.    Binding Nature of Agreement.

This Agreement shall be binding upon and inure to the benefit of Pachulski and the Companies.

M.    Severability in Event of Partial Invalidity.

If any provision of this Agreement is held in whole or in part to be unenforceable for any reason, the remainder of that provision and of the entire Agreement will be severable and remain in effect.

N.    Modification by Subsequent Agreement.

This Agreement may be modified by subsequent agreement of the parties only by an instrument in writing signed by both of them, or an oral agreement only to the extent that the parties carry it out.

O.    Miscellaneous Matters.

Pachulski is being engaged by each of the Companies, being the individual(s), entity or entities for which appear below signature blocks (other than the signature block for Pachulski).

The validity of this Agreement, its construction, interpretation, and enforcement, and the rights of the parties hereto shall be determined under, governed by, and construed in accordance with the internal laws of the State of California, without regard to principles of conflicts of law.

This Agreement may be executed by the signatories through use of multiple copies of the signature pages.

Each Company acknowledges having received a signed duplicate copy hereof for Company to keep for its own records.

P.    Effective Date.

This Agreement will govern all services performed by Pachulski on behalf of the Companies commencing with the date Pachulski first performed services. The date at the beginning of this Agreement is for reference only. Even if this Agreement does not take effect, the Companies will be obligated to pay Pachulski the reasonable value of any services Pachulski may have performed for the Companies.

THE PARTIES HAVE READ AND UNDERSTOOD THE FOREGOING TERMS AND AGREE TO THEM AS OF THE DATE PACHULSKI FIRST PROVIDED SERVICES. EACH COMPANY AGREES TO BE LIABLE, JOINTLY AND SEVERALLY, FOR ALL OBLIGATIONS UNDER THIS AGREEMENT.

[Signature Page to Follow]

Dated: January 8, 2016

RICHARD PACHULSKI

By: _____

STAR AUTO PARTS, INC.

By: _____
RONALD TURNER (Print Name)
PRESIDENT (Title)

METROPOLITAN AUTOMOTIVE
WAREHOUSE, INC.

By: _____
RONALD TURNER (Print Name)
PRESIDENT (Title)

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 660 Newport Center Drive, 4th Floor, Newport Beach, CA 92660.

A true and correct copy of the foregoing document entitled: **SUPPLEMENT TO MOTION FOR ENTRY OF ORDER PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE APPROVING THE ENGAGEMENT CONTRACT OF RICHARD M. PACHULSKI AS CHIEF RESTRUCTURING OFFICER OF THE DEBTOR, NUNC PRO TUNC TO THE PETITION DATE; DECLARATION OF RONALD TURNER IN SUPPORT THEREOF** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On January 14, 2016, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Harold L Collins    halc@knfilters.com, hcollinslaw@aol.com
- Abram Feuerstein    abram.s.feuerstein@usdoj.gov
- Everett L Green    everett.l.green@usdoj.gov
- James A Hayes    jhayes@jamesahayesaplc.com
- Garrick A Hollander    ghollander@winthropcouchot.com, pj@winthropcouchot.com;vcorbin@winthropcouchot.com;mconour@winthropcouchot.com
- Gregory K Jones    GJones@dykema.com, CPerez@dykema.com
- Teddy M Kapur    tkapur@pszjlaw.com
- Jeannie Kim    jkim@winthropcouchot.com, vcorbin@winthropcouchot.com;pj@winthropcouchot.com
- Mette H Kurth    mkurth@foxrothschild.com, pchlum@foxrothschild.com
- Peter W Lianides    plianides@winthropcouchot.com, pj@winthropcouchot.com;vcorbin@winthropcouchot.com
- Alan I Nahmias    anahmias@mbnlawyers.com, jdale@mirmanbubman.com
- Samuel A Newman    snewman@gibsondunn.com
- Daniel H Reiss    dhr@lnbyb.com, dhr@ecf.inforuptcy.com
- Mohammad Tehrani    Mohammad.V.Tehrani@usdoj.gov
- United States Trustee (RS)    ustpregion16.rs.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On _____, 2016, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on January 14, 2016, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Via Overnight Delivery
Honorable Wayne Johnson
3420 Twelfth St., Suite 384
Riverside, CA 92501-3819

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 14, 2016 | Melody Conour | /s/ Melody Conour |
|---|---|---|
| Date | Printed Name | Signature |