1

GARRICK A. HOLLANDER − State Bar No. 166316

2

ghollander@winthropcouchot.com
**WINTHROP COUCHOT**

3

**PROFESSIONAL CORPORATION**
660 Newport Center Drive, Suite 400

4

Newport Beach, CA 92660
Telephone:  (949) 720-4100

5

Facsimile:   (949) 720-4111

6

[Proposed] General Insolvency Counsel for
Debtor and Debtor-in-Possession

7

8

**UNITED STATES BANKRUPTCY COURT**

9

**CENTRAL DISTRICT OF CALIFORNIA**

10

**RIVERSIDE DIVISION**

11

12

In re:

13

METROPOLITAN AUTOMOTIVE,
WAREHOUSE, INC., a California

14

Corporation,

15

Debtor and

16

Debtor-in-Possession.

17

18

19

20

21

22

23

24

25

26

27

28

Case Nos. 6:16-bk-10096-WJ

Chapter 11 Proceeding

**DEBTOR'S EMERGENCY MOTION FOR ORDER PURSUANT TO SECTIONS 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE AND RULE 4001 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (A) AUTHORIZING  THE DEBTORS TO OBTAIN SECURED SUPERPRIORTY POSTPETITION FINANCING AND (B) SCHEDULING FINAL HEARING; MEMORANDUM OF POINTS AND AUTHORITIES**

**[DECLARATION OF RONALD TURNER FILED CONCURRENTLY HEREWITH]**

**[11 U.S.C. §§ 362, 363, 364(c) (1), (c)(3), 364(d)(1)]**

DATE:      January 26, 2016
TIME:      2:00 p.m.
PLACE:    Courtroom 304
              3420 Twelfth Street
              Riverside, California 92501

Metropolitan Automotive Warehouse, Inc. ("Metro") and Star Auto Parts, Inc. ("Star"), California corporations and debtors and debtors in possession (collectively, the "<u>Debtors</u>"), hereby move the Court on an emergency basis (the "<u>Motion</u>") for entry of an order:

A.    Authorizing the Debtors to obtain postpetition financing pursuant to sections 105, 361, 362, 364(c)(1), 364(c)(3),  364(d) and 364(e) of chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") on an interim basis in the form of a revolving loan facility by which the Debtors may borrow up to $5 million to be provided by IEH Auto Parts, LLC d/b/a Auto Plus, or its designee ("<u>Auto Plus</u>") pursuant to the terms and conditions as set forth in the Interim Order, the Final Order (as defined below), the Intercreditor Agreement (as defined below), and all other agreements, documents and instruments delivered or executed in connection therewith, as hereafter amended, supplemented or otherwise modified from time to time (collectively, the "<u>DIP Loan Documents</u>");

B.    Granting Auto Plus a superpriority administrative claim pursuant to section 364(c)(1), with priority over any or all administrative expenses of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code, to the extent of the funds advanced post-petition to the Debtors

C.    Granting Auto Plus a junior lien pursuant to section 364(c)(3) on all assets and property of the Debtors subject to a valid, binding, enforceable and non-avoidable lien to the extent of the funds advanced post-petition to the Debtors;

D.    Granting Auto Plus a senior, priming lien pursuant to §364(d)(1) in DIP Collateral (as defined in the Motion);

E.    Scheduling a final hearing on February 16, 2016 pursuant to Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") 4001(b) and (c); and

F.    Granting such other and further relief as the Court deems just and proper.

Concurrently with the filing of this Motion, the Debtors will serve, <u>via overnight mail</u>, a copy of the Motion on: (a) the Office of the United States Trustee for the Central District of

216699

California (the "U.S. Trustee"); (b) counsel to the Prepetition Lender (as defined in the Motion); (c) proposed counsel to the committee of unsecured creditors; (d) other parties asserting a lien on or a security interest in the assets of the Debtors to the extent reasonably known to the Debtors; and (e) those creditors holding the twenty (20) largest unsecured claims.

This Motion is submitted and based the Memorandum of Points and Authorities attached hereto, the Declaration of Ronald Turner ("Turner Declaration") filed concurrently herewith, and any other such evidence, both oral and documentary, as the Court may consider prior to or at the hearing on this emergency motion.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order granting the relief requested above, and such additional relief as the Court deems just and proper.

DATED: January 22, 2016        **WINTHROP COUCHOT
PROFESSIONAL CORPORATION**


By: ___/s/ Garrick A. Hollander_____
        Garrick A. Hollander
[Proposed] General Insolvency Counsel for
Debtor and Debtor-in-Possession

216699

| | |
|---|---|
| 1 | **MEMORANDUM OF POINTS AND AUTHORITIES** |
| 2 | **I.** |
| 3 | **NEED FOR EMERGENCY RELIEF** |
| 4 | The Debtors are in the midst of a potentially imminent terminal financial crisis.  At the |
| 5 | time of the submission of this Motion to the Court, the Debtors do not have sufficient cash to |
| 6 | purchase inventory to meet customer demand.  Therefore, the Debtors are depleting existing |
| 7 | inventory.  The ability to obtain new inventory is absolutely critical for the Debtors to preserve |
| 8 | going concern value, thereby maximizing value for the benefit of creditors and all stakeholders. |
| 9 | Without the ability to replenish inventory, the Debtors will suffer further declining sales, the loss |
| 10 | of key sales personnel, and the loss of customer confidence.  In short, absent the ability to acquire |
| 11 | new inventory, the Debtors will be self-liquidating, ultimately resulting in the reduction of the |
| 12 | enterprise value of the Debtors' businesses and leading to an inevitable wind-down of the Debtors' |
| 13 | operations. |
| 14 | **II.** |
| 15 | **THE DIP FACILITY** |
| 16 | Auto Plus has agreed to lend up to $5,000,000 on a revolving basis to the Debtors |
| 17 | (the "DIP Facility"), which revolving loan facility will assist the Debtors to systematically fund |
| 18 | their inventory purchases through and until the anticipated closing(s) of the sale of the Debtors' |
| 19 | businesses.  The Debtors anticipate that they will file before the end of next week a motion |
| 20 | seeking the approval of bidding procedures. |
| 21 | Bank of the West (the "Prepetition Lender") has consented to the proposed transaction |
| 22 | with Auto Plus[1].  The Debtors are also informed that CWD, LLC, dba Centric Parts, Stop Tech, |
| 23 | Power Slot, WD Source.com ("CWD") – a purported secured creditor of Metro – supports, or at a |
| 24 | minimum, does not oppose the motion and the terms of the financing provided by Auto Plus. |
| 25 | Based on the foregoing, the Debtors respectfully submit that under the circumstances that |
| 26 | the Debtors face, emergency relief is both necessary and appropriate. |
| 27 | |
| 28 | |

---

[1] The Prepetition Lender and Auto Plus are in the process of finalizing an intercreditor agreement.

216699

# III.

## STATEMENT OF FACTS

### A.    Background of Debtor

Metro is a family-owned Southern California-based business, distributing aftermarket automotive parts for the last sixty years, with operations in southern California and central California.  Metro distributes aftermarket automotive parts to retail stores and also sells to, and fulfills orders for, various e-commerce customers.   Star, a California corporation and wholly-owned subsidiary of the Metro, also is a Southern California based retailer of aftermarket automotive parts.  Star sells aftermarket automotive parts directly to (1) repair facilities, known in the industry as the "Do-it-for-Me" channel, end-users, or the "Do-it-Yourself" channel, and (2) businesses that own and operate vehicle fleets.  The Debtors collectively employ approximately 1,000 employees.

### B.    Events Precipitating Chapter 11 Filings

The Debtors grew very rapidly from 2009 through 2015.  As a result of growing demand during this timeframe, the Debtors expanded operations from one distribution center and eight retail stores in 2009 to five distribution centers and nine retail stores in 2015, as well as launched a business to support a growing list of e-commerce customers across all five distribution centers.  Due to the need to provide high service levels seven days per week and to compete aggressively to maintain and grow its e-commerce business, the business experienced rising operating costs and falling margins leading to operating losses and cash flow issues.

Recently, one of the Debtors' largest unsecured trade creditors, Federal-Mogul Autoparts ("Federal Mogul"), filed an action to recover on its claim.  In its effort to obtain recovery by the Debtors on account of its claim, Federal Mogul filed a motion to appoint a Federal Court receiver in Michigan (the "Receiver Motion").  The Michigan Federal Court scheduled a hearing to discuss the Receiver Motion on January 7, 2016.  To prevent the potential appointment of a receiver, the Debtors filed these chapter 11 cases on January 6, 2016 (the "Petition Date").

216699

C.    **Secured Claims Asserted Against Debtors' Cash Collateral**

The Debtors and the Prepetition Lender are parties to that certain Loan And Security Agreement, dated as of June 8, 2012 (as amended, modified or supplemented from time to time, the "Prepetition Loan Agreement" and, together with all security agreements, UCC financing statements, and other documents, instruments and agreements executed in connection with the Prepetition Loan Agreement, the "Prepetition Loan Documents"). Pursuant to the Prepetition Loan Documents, the Prepetition Lender was granted first priority liens on, and security interests in substantially all of the Debtors' assets and property (collectively, the "Prepetition Liens").

The Prepetition Lender is the Debtors' primary secured creditor.  Notwithstanding certain allegations made by CWD—specifically, its assertion that it holds a security interest in inventory and possibly other assets of the Metro Automotive—before this Court, the Debtors dispute such allegations and believe that only the Prepetition Lender holds lien rights against the Debtors' "cash collateral," as such term is defined in section 363(a) of the Bankruptcy Code.  Currently, the Debtors believe that approximately $21 million is owed and outstanding pursuant to the Prepetition Loan Documents.

**IV.**

**PROPOSED POST-PETITION DEBTOR-IN-POSSESSION FINANCING**

Auto Plus has agreed to provide a $5 million revolving loan facility to enable the Debtor to purchase inventory from two sources: from Auto Plus directly at Auto Plus's cost (i.e, WD invoice pricing), or alternatively, from a third party supplier that has been approved by Auto Plus at pricing provided by the terms of the supply agreement with such supplier.  A true and correct copy of the term sheet (the "DIP Term Sheet") summarizing the terms of the proposed loan is attached as **Exhibit "1"** to the Turner Declaration and incorporated herein by this reference.  The following is a summary of the terms by which Auto Plus has agreed to provide a revolving facility to the Debtors, as well as some background on Auto Plus.

216699

## A.    Summary of Key Terms of Loan Proposal.[2]

| | |
|---|---|
| Amount of Loan: | Revolving Commitment Up to $5,000,000. |
| Use of Proceeds: | Solely for the purchase of inventory in the ordinary course of business of the Debtors directly from (a) Auto Plus or (b) a supplier which the Lender has approved (it being understood and agreed that any supplier whose products are carried by Auto Plus shall be deemed to be approved by Auto Plus). |
| Inventory Pricing: | The price of inventory procured directly from Auto Plus shall be at Auto Plus' WD invoice price and if procured through a pre-approved supplier, pursuant to the terms set forth in the agreement with the respective supplier. |
| Interest Rate: | Interest shall accrue at the 30 day Libor rate plus 7% interest per annum, and shall be payable on a monthly basis on the first business day of each month. |
| Default Interest Rate: | Commencing upon the occurrence of an Event of Default, the amounts outstanding under the DIP Facility shall immediately begin to accrue interest at the interest rate then in effect plus two percent (2%) per annum. |
| DIP Liens:[3] | Auto Plus shall be granted: (i) pursuant to Section 364(c)(3) of the Bankruptcy Code, valid, enforceable, perfected and non-avoidable liens on and security interests in all assets and property of the Debtors, now owned or hereafter acquired, wherever located, whether real or personal, tangible or intangible other than the DIP Collateral that was subject to a valid, enforceable, perfected and non-avoidable lien as of the Petition Date (collectively, the "Prepetition Collateral") immediately junior only to any liens and security interests of (x) the Prepetition Lender (as set forth in the Intercreditor Agreement) and (y) any third party, i.e., not the Prepetition Lender that had a pre-existing lien on the Petition Date (a "Third Party Lienholder") but solely to the extent that such liens and security interests of Third Party Lienholders were, in each case, valid, enforceable, perfected and non-avoidable as of the Petition Date (the "Senior Third Party Liens"); and (ii) pursuant to Section 364(d) of the Bankruptcy Code, valid, enforceable, perfected and non-avoidable liens on and security interests in all DIP Collateral (i.e., inventory purchased with the DIP Facility, the proceeds thereof and a proceeds account), which liens and security interests shall be senior to and prime the Prepetition Liens, the CWD Interest, all Senior Third Party Liens and any adequate protection or other postpetition liens granted under any order entered or stipulation filed in these Cases, or otherwise, in effect on or after the date of this Interim Order. |
| | The DIP Obligations shall, pursuant to Section 364(c)(1) of the Bankruptcy Code, at all times constitute an allowed superpriority claim (the "DIP Superpriority Claim") of the DIP Lender, and be payable from and have recourse to all DIP Collateral and all Prepetition Collateral, subject to the Intercreditor Agreement. No costs or expenses of administration, including, without limitation, professional fees allowed and payable under Sections 328, 330 and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in these proceedings or in any Successor Cases, and no priority claims are, or will be, senior to, prior to or *pari passu* with the DIP Liens, the DIP |

---

[2] This summary is qualified in its entirety by reference to the Interim Order, the Final Order and the DIP Loan Documents.

[3] The "DIP Liens" constitute all liens and security interests granted to Auto Plus pursuant to the Interim Order, any Final Order and the other DIP Loan Documents. Defined terms used in this summary but not otherwise defined herein shall have the meanings ascribed to them in the Interim Order and/or the applicable Loan Documents.

216699

Superpriority Claim or any of the DIP Obligations, or with any other claims of the DIP Lender arising hereunder or under the other DIP Loan Documents, or otherwise in connection with the DIP Facility.

Term of Loan:    The DIP Facility shall be paid in full on the date which is the earliest of: (i) forty (40) days after the Petition Date, if the Court has not entered a final order approving the proposed DIP Facility in form and substance satisfactory to the DIP Lender in its sole discretion; (ii) the 120th day following the Petition Date; (iii) the effective date of a chapter 11 plan in the Cases, which is confirmed by an order of the Bankruptcy Court; (iv) the closing date of a sale of all or any material part of the assets of the Debtors under section 363 of the Bankruptcy Code; and (v) date of acceleration by the DIP Lender after an Event of Default (as defined in the DIP Loan Documents), all as further described in the DIP Loan Documents.

Remedies:    Upon the occurrence and during the continuance of an Event of Default, the Borrower may not expend any funds from the Proceeds Account. Following three (3) days' notice of an Event of Default to the Borrower, any official committee of unsecured creditors appointed in the Cases, and the U.S. Trustee, unless such Event of Default is cured within such time, the DIP Lender shall have relief from the automatic stay to exercise remedies under the Loan Documents.

## B.    Disclosure About Auto Plus.

Auto Plus is a leading North American distributor of replacement parts, equipment, tools, accessories, paint and related products in the automotive aftermarket. Auto Plus is strongly established and strategically spread across 48 American States. The Auto Plus network is composed of 24 warehouses and over 2,300 stores (including 239 parts stores operated by Auto Plus) spanning the United States and supplying tens of thousands of installers.

AutoPlus has expressed interest in purchasing the Debtors' assets at a sale under section 363 of the Bankruptcy Code; however, the DIP Facility is separate from the sales process and is not conditioned on AutoPlus' successful participation in the sale process.

Auto Plus is a wholly owned subsidiary of IEH Auto Parts Holding LLC, which, in turn, is a wholly owned subsidiary of Icahn Enterprises Holdings L.P. Icahn Enterprises Holdings L.P. also indirectly holds a majority position in Federal-Mogul Motorparts, a significant unsecured creditor of the Debtors.

216699

# V.

## THIS COURT IS AUTHORIZED TO ALLOW THE DEBTOR TO ENTER
## INTO POST-PETITION SECURED FINANCING ARRANGEMENT

Section 364 of the Bankruptcy Code authorizes a debtor to incur debt with priority over certain administrative expenses and secured by lien on property of the estate.  In particular, section 364 of the Bankruptcy Code provides, in pertinent part:

> (c) If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt--
>
> > (1)  with priority over any or all administrative expense of the kind specified in Section 503(b) or 507(b) of this title;
> > …
> > (2) secured by a junior lien on property of the estate that is subject to a lien.
>
> (d) (1) The Court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if –
>
> > (A)  the trustee is unable to obtain such credit otherwise; and
>
> > (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

### A.    The Loan May be Afforded Priority and Security Pursuant to Sections 364(c)(1) and 364(c)(3) of the Bankruptcy Code.

A common test for evaluating requests under section 364(c) is whether:  (1) the debtor cannot obtain unsecured administrative credit; (2) the credit is necessary to preserve the assets of the estate; and (3) the terms of the credit are fair and reasonable.  See In re Crouse Group, Inc., 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987).

#### 1.    The DIP Facility Is Necessary to Preserve the Assets of the Estate.

The Debtors' entry into the proposed DIP Facility is absolutely critical to the viability of the Debtors' operations.  The Debtors are worth more as an operating going-

216699

1   concern than a liquidator.  If the Debtors do not enter into the DIP Facility, the Debtors will

2   simply be unable to replenish inventory and stock their shelves, resulting in a decrease in

3   going concern value.  Under that scenario, the creditors would realize significantly less

4   from this bankruptcy proceeding, the purpose of which is to facilitate a sale of the Debtors

5   as a going concern.  The proposed DIP Facility will bridge the gap needed to close a sale on

6   the Debtors' businesses, inuring to the benefit of the Debtors' stakeholders.  Consequently,

7   access to the DIP Facility will increase the likelihood that the Debtors' estates will be

8   preserved and the Debtors' creditors will receive the highest return on their claims.

9           2.      The Debtors Cannot Obtain Unsecured Administrative Credit.

10          The Debtors have not been able to obtain the necessary working capital from any

11   source under any terms, secured or unsecured.  Because the Debtors have attempted but

12   failed to obtain financing, and such financing is critical to the viability of its operations, the

13   approval of this post-petition financing is necessary to preserve the assets of the estate and

14   maximize value to the Debtors' creditors and stakeholders.

15          3.      The Terms of the Proposed DIP Facility are Fair and Reasonable.

16          The terms of the DIP Facility are fair and reasonable given the Debtors' current

17   financial condition.  Indeed, the Debtors cannot obtain financing on better terms than those

18   of this loan that provides the Debtors with the necessary liquidity to replenish their

19   inventory and resume sales at a normalized pace.  The interest rate and other terms of the

20   loan are commensurate with the market.

21          In conclusion, the Debtors submit that entering the DIP Facility is in the best interests of

22   the Debtors' estates, serves to preserve the Debtors' estates, and therefore, is in the best interests of

23   the Debtors' creditors and stakeholders.  Accordingly, the Debtors respectfully submit that the

24   Court should approve the DIP Facility with the protection afforded to Auto Plus under sections

25   364(c)(1) and (3) of the Bankruptcy Code.

26

27

28

216699

**B.**     **The Loan May be Afforded Security Pursuant to Section 364(d)(1) of the Bankruptcy Code.**

A debtor may obtain financing under section 364(d) of the Bankruptcy Code when the following two criteria are met:   (1) the debtor cannot obtain credit by another means; and (2) adequate protection is provided for the interest of the holder of the lien on the property of the estate on which such senior lien is proposed to be granted.   Here, Auto Plus seeks to obtain a priming lien only on assets purchased with proceeds of the DIP Facility and the proceeds of such assets (as further described in the DIP Loan Documents).   This is akin to a purchase money security interest under the Uniform Commercial Code, which also allows a lender to receive a senior lien on specific assets purchased with loans made by such lender.

1.     The Debtors Have Been Unable to Obtain Credit by Another Means.

The first prong of section 364(d)(1) of the Bankruptcy Code requires that the Debtors establish that they are unable to obtain such credit otherwise.   Specifically, section 364(d)(1)(A) of the Bankruptcy Code requires that the following be shown:

> To meet the requirement of 11 USCA § 364(d)(1)(A) of demonstrating that the estate is unable to obtain credit other than by granting a superpriority lien on encumbered property, it is not necessary for the representative of the estate to contact every possible lender.   It suffices for the trustee or debtor in possession to demonstrate that he or she has made an unsuccessful, but good-faith effort to obtain less onerous financing by contacting at least several available lending institutions.   The fact that the trustee could have obtained a small, unsecured loan elsewhere does not indicate that he or she could obtain the amount needed without granting a superpriority lien.

9B Am. Jur. 2d Bankruptcy § 1561 (2006).  See also In re Reading Tube Industries, 72 B.R. 329, 332 (Bankr.E.D.Pa. 1987) ("The first prong requires the debtor to demonstrate that less onerous post-petition financing was unavailable.");  In re Snowshoe Co., Inc., 789 F.2d 1085, 1088 (4th Cir. 1986) ("The statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable.")

In Matter of Stanley Hotel, Inc., 15 B.R. 660, 663 (D.Colo. 1981), the District Court affirmed the Bankruptcy Court's order approving senior secured financing under section

216699

364(d)(1) of the Bankruptcy Code.   The Court held that section 364(d)(1)(A) of the

Bankruptcy Code was satisfied where at least two banks had "refused to grant unsecured

loans".   Moreover, the mere fact that the estate may have been able to obtain a small

unsecured loan did not indicate that the estate could have obtained a sufficient loan amount

at issue without granting a senior lien.

> [T]he appellants' claim that the trustee could have obtained credit
> elsewhere, since Club Holiday granted the trustee a $50,000
> unsecured loan in conjunction with the purchase agreement of
> February 18, 1981, is without merit. ... [T]he mere fact that the
> trustee may have been able to obtain a $50,000 unsecured loan
> does not indicate that he could have obtained the $700,000 amount
> at issue without granting a senior lien.

Matter of Stanley Hotel, Inc., 15 B.R. 660, 663 (D.Colo. 1981).

Here, the Debtors were "unable otherwise to obtain sufficient credit on terms equal

to or more favorable than the terms set forth in [Credit Agreement]."  In re Defender Drug

Stores, Inc., 126 B.R. 76, 79 (Bankr.D.Ariz. 1991).  See also In re Qualitech Steel Corp.,

2003 WL 21314073, *3 (S.D.Ind. 2003)[4] ("Under the circumstances, no other source of

financing exists, on terms more favorable than those offered by the Banks.")

Accordingly, courts accept as sufficient evidence that the Debtors contact two to

four potential lenders to satisfy section 364(d)(1)(A) of the Bankruptcy Code.  See, e.g., In

re Sky Valley, Inc.  100 B.R. 107, 113 (Bankr.N.D.Ga. 1988) (where debtor approaching

four (4) potential lenders was sufficient); In re Ames Dept. Stores, Inc., 115 B.R. 34,

40 (Bankr.S.D.N.Y. 1990) ("Debtors contacted four lenders ... this Court is satisfied that

the Debtors have demonstrated the unavailability of unsecured financing").  See also In re

Reading Tube Industries, 72 B.R. 329, 332 (Bankr.E.D.Pa. 1987) ("Courts have found ... 2

attempts to be sufficient under the particular circumstances of each case").

As forth in the Turner Declaration, the financing proposed herein is the result of a

significant, determined effort by the Debtors, and it represents the most favorable financing

currently available to the Debtors.   The Debtors were unable to obtain more favorable

---

[4] *Reversed on other grounds* Mellon Bank, N.A. v. Dick Corp., 351 F.3d 290 (7th Cir. 2003).

216699

1    financing terms from any other source, including parties who have expressed their desire to

2    bid for the Debtors' assets in the upcoming sale.  The Debtors have been in negotiations

3    with several potential purchasers of the Debtors' assets, and have yet to select a stalking

4    horse bidder.  The Debtors have engaged in discussions with at least three (3) other

5    potential bidders who have expressed some interest in extending credit.  The Debtors,

6    however, have been unable to come to any agreement to date, on more favorable financing

7    terms than those provided in the DIP Facility.

8           The Debtors have also been in contact with at least four (4) separate traditional DIP

9    lenders.  These traditional DIP lenders have refused to extend credit on equal or more

10   favorable terms in particular because (a) they are unwilling to extend credit on a junior

11   secured basis, and the Prepetition Lender will not subordinate its current first priority lien

12   to a blanket lien in favor of a DIP Lender, or (b) their potential DIP financing will not be

13   packaged with a purchase agreement providing that such lender be the stalking horse.

14          The Debtors most recently tried to obtain credit from one of their vendors and

15   prospective bidder, Factory Motor Parts.  Unfortunately, the parties were unable to reach a

16   deal.  In addition, the Debtors attempted but were unable to obtain more favorable

17   financing terms from the Prepetition Lender itself.  The Prepetition Lender has indicated it

18   prefers that the Debtors obtain additional credit from a third party source, such as Auto

19   Plus.  Accordingly, as long as the Debtors have the ability to obtain credit from Auto Plus,

20   the Prepetition Lender will not extend any additional credit, let alone on more favorable

21   terms.

22          The Debtors do not have the luxury of time to wait for another deal to materialize.

23   Accordingly, the Debtors respectfully submit that, at the present time, they are unable to

24   obtain comparable credit on terms more favorable than the proposed financing from Auto

25   Plus.

26

27

28

216699

1           2.      <u>No Showing of Adequate Protection is Necessary as Prepetition Lender</u>

2                   <u>has consented to the Proposed Transaction</u>.

3           The second prong of section 364(d)(1) of the Bankruptcy Code requires that a

4    debtor show that the interests of the holder of an existing lien on the property are

5    adequately protected.  A creditor only has standing to assert a lack of adequate protection

6    of *its* security interest.  An objector lacks standing to assert a lack of adequate protection

7    on behalf of some other party's interest.  <u>See</u> <u>In re Sky Valley, Inc.</u>, 100 B.R. 107, 114

8    (Bankr. N.D. Ga. 1988)[5] ("Anchor Bank lacks standing, however, to argue [a lack of

9    adequate protection] on behalf of the other lienholders who, after due notice and an

10   opportunity to be heard, either never objected or filed objection to Debtor's motion and

11   withdrew them during the hearings."); <u>In re Seatco, Inc.</u>, 257 B.R. 469, 478 fn 3 (Bankr.

12   N.D. Tex.) <u>opinion modified on reconsideration,</u> 259 B.R. 279 (Bankr. N.D. Tex. 2001)

13   (creditor had no standing to assert objection "on behalf of other creditors").

14          As a result, the Debtors need not establish adequate protection of a secured

15   creditor's interest under section 364(d) of the Bankruptcy Code if such creditor consents

16   or otherwise fails to oppose the Motion.  The court in <u>Anchor Sav. Bank FSB v. Sky</u>

17   <u>Valley, Inc.</u>, 99 B.R. 117, 122 (N.D.Ga. 1989), held that the debtor is relieved of any

18   burden to establish adequate protection where the existing lienholder does not object to

19   the proposed financing:

20          > [W]hile § 364(d)(2) clearly puts the burden on the debtor-in-
           > possession to demonstrate that there is adequate protection of the
21         > primed lienholder, the section is silent as to whether a lienholder
           > may waive the protection. In the instant case, **the bankruptcy**
22         > **court considered the adequate protection only of the lienholder**
           > **which objected to the new senior lien**, holding that Anchor
23         > lacked standing to argue the adequate protection, vel non, of the
           > undersecured lienholders who withdrew their objections to the
24         > superpriority lien. Admittedly, because the junior lienholders are
           > already undercollateralized, the authorization of superpriority
25         > financing makes their positions even more vulnerable. Each
           > creditor, however, is entitled to seek its own best interest, within
26
27

28   _____
     [5] <u>aff'd sub nom.</u> <u>Anchor Sav. Bank FSB v. Sky Valley, Inc.</u>, 99 B.R. 117 (N.D. Ga. 1989)

216699

the strictures of the bankruptcy code. The fact that those undersecured lienholders either did not object or withdrew their objections to the superpriority financing must mean that they expect to derive some benefit from the transaction. Perhaps each concluded that the superpriority lien would help bring about a successful reorganization or at least increase the value of the collateral, ultimately increasing the amount each will receive on its undersecured claim. The court need not speculate; **by tacitly consenting to the superpriority lien, those creditors relieved the debtor of having to demonstrate that they were adequately protected**.

Anchor Sav. Bank FSB v. Sky Valley, Inc., 99 B.R. at 122; Bland v. Farmworker Creditors, 308 B.R. 109, 113 (S.D. Ga. 2003) quoting 2C Bankr.Service L.Ed. § 20:380 (Nov.2003) ("Undersecured lienholders, by tacitly consenting to superpriority lien by either not objecting or withdrawing their objections to superpriority financing under 11 U.S.C.A. § 364(d), relieved debtor of having to demonstrate that they were adequately protected."); James Buchwalter, Construction and Application of Bankruptcy "Superpriority Lien" or "Priming Lien" Provision, 11 U.S.C.A. § 364(d), 63 A.L.R. Fed. 2d 563 (2012) ("Undersecured creditors may relieve the debtor of having to demonstrate that they were adequately protected by tacitly consenting to a superpriority lien that the debtor seeks under 11 U.S.C. § 364(d).")

Accordingly, here, the Debtors are relieved of any burden to establish adequate protection of the interests of the Prepetition Lender and/or CWD, who have consented to the transaction and are otherwise being provided adequate assurance through replacement liens in respect of the Debtors' cash collateral.

3.     The Secured Creditors' Interests Will Remain Adequately Protected by a Substantial Equity Cushion.

Even assuming *arguendo* that the Prepetition Lender had not consented to the proposed financing under section 364(d) of the Bankruptcy Code, their interest in collateral is "adequately protected" by a substantial equity cushion.   Pursuant to section 364(d)(1) of the Bankruptcy Code, the court may authorize "the incurring of debt secured by a senior . . . lien on property of the estate that is subject to a lien"  if "there is adequate protection of the

216699

1    interest of the holder of the lien on the property of the estate on which such senior or equal

2    lien is proposed to be granted." 11 U.S.C. § 364(d)(1).

3          It is well established that an equity cushion constitutes adequate protection for the

4    purposes of section 364(d)(1) of the Bankruptcy Code. "The existing of an equity cushion

5    seems to be 'the preferred test in determining whether priming of a senior lien is

6    appropriate under section 364.'" In re YL W. 87th Holdings I LLC, 423 B.R. 421, 441

7    (Bankr. S.D.N.Y. 2010) quoting In re Strug–Div., LLC, 380 B.R. 505, 513 (Bankr. Ill.

8    2008).

9          The Ninth Circuit in In re Mellor, 734 F.2d 1396, 1401 (9th Cir. 1984), established

10   that an equity cushion in the range of 10% to 20% constitutes adequate protection of the

11   secured creditors' interest in the collateral.

12             Although the existence of an equity cushion as a method of
13         adequate protection is not specifically mentioned in § 361, it is the
           classic form of protection for a secured debt justifying the restraint
14         of lien enforcement by a bankruptcy court. In fact, it has been held
15         that **the existence of an equity cushion, standing alone, can
           provide adequate protection**. A sufficient equity cushion has
16         been found to exist although not a single mortgage payment had
           been made. *** The bankruptcy court found that the value of the
17         residence is $105,000; thus, there is an "equity cushion" to protect
18         the sellers' interest in the amount of $20,340 or approximately 20%
           of the total value. **A 20% cushion has been held to be an
19         adequate protection for a secured creditor**. See In re McGowan,
           6 B.R. 241, 243 (B.Ct.E.D.Pa.1980) [**holding a 10% cushion is
20         sufficient to be adequate protection**]; In re Rogers Development
21         Corp., 2 B.R. 679, 685 (B.Ct.E.D.Virg. 1980) [**court decided that
           an equity cushion of approximately 15% to 20% was sufficient
22         adequate protection to the creditor, even though the debtors
           had no equity in the property**.]; In re Breuer, 4 B.R. 499, 501
23         [creditor protected by equity cushion of $21,000 despite fact that
24         debtor lacked equity in the property.]. *** The **purpose of
           adequate protection under § 361 is to insure that the secured
25         creditor receives in value essentially what he bargained for, not
           a windfall.**
26             The bankruptcy court's finding that there was inadequate
           protection for the sellers' secured interest was clearly erroneous.

27   Id. at 1401 (emphasis added) (citations omitted in part).

28

216699

In In re Boulders On The River, Inc., 164 B.R. 99 (B.A.P. 9th Cir. 1994) the Ninth Circuit Bankruptcy Appellate Panel found that an equity cushion of **11.45%** constituted adequate protection. Boulders, 164 B.R. at 104 ("we find Pacific was adequately protected with a cushion of 11.45%."). See also, e.g. In re Boodrow, 126 F.3d 43, 53 (2d Cir. 1997) (equity cushion of 10% constitutes adequate protection); In re Kendall, 2005 WL 2293573, *1 (Bankr.C.D.Ill. 2005) (Lender's interest was adequately protected by "the equity cushion of ten percent."); In re Dynaco Corp., 162 B.R. 389, 398 (Bankr.D.N.H. 1993) (equity cushion of approximately 17 % is adequate protection); In re Helionetics, 70 B.R. 433 (Bankr.C.D.Cal. 1987) (20.4% is adequate); In re Hawaiian Pacific Industries, 17 B.R. 670 (Bankr. D.Ha. 1982) (15% is adequate); In re Rogers Development Corp., 2 B.R. 679 (Bankr. E.D.Va. 1980) (17% is adequate); In re Pitts, 2 B.R. 476 (Bankr.C.D.Cal.1979) (15% is adequate); In re McGowan, 6 B.R. 241, 243 (Bankr. E.D.Pa. 1980) (holding a 10% equity cushion is sufficient to be adequate protection); In re Schlichter, 22 B.R. 666 (Bankr.E.D.Pa.1982) (12% was found sufficient); In re Carson, 34 B.R. 502, 506 (D.Kan. 1983) (equity cushion of $138,600.00 or 11% was adequate).

Here, as set forth above, the Debtors anticipate that they will seek to sell substantially all of their assets pursuant to a sale under Section 363 of the Bankruptcy Code. The Debtors have been in negotiations with multiple potential purchasers of the Debtors' assets, and are in the process of selecting a stalking horse bidder. The Debtors have received purchaser offers for their assets in amounts well in excess of the balance owing to the secured creditors.[6] The Debtors anticipate there will be a robust auction, and

---

[6] Purchase and sale offers can constitute admissible evidence of the value of property. See 50-Off Stores, Inc. v. Banques Paribas (Suisse), S.A., 180 F.3d 247, 255 (5th Cir. 1999) ("an offer from another legitimate buyer" admitted as evidence of value of stock); Ainsley Corp. v. C.I.R., 332 F.2d 555, 558 (9th Cir. 1964) ("In an eminent domain case in which the owner has, at a time not too remote from the taking, offered to sell the property in question for less than the amount which he is claiming, the offer is evidence of value which is admissible against his claim."); Allison v. Ticor Title Ins. Co., 979 F.2d 1187, 1198 (7th Cir. 1993) ("offers of purchase of the lodge were relevant to the fair market value of the individual leases"); Defiance Button Machine Co. v. C & C Metal Products Corp., 759 F.2d 1053, 1061 (2d Cir. 1985) ("value of the company's goodwill and of the mark symbolizing it may well be evidenced by C & C's offer to purchase"); In re Marathon Foundry & Mach. Co., 239 F.2d 122, 128 (7th Cir. 1957) ("offer … made to purchase shares" of stock admitted as evidence of value); Muller v. S. Pac. B. Ry. Co., 83 Cal. 240, 243, 23 P. 265, 266 (1890) ("The testimony of Muller as to offers made for the purchase of the lot of land above mentioned not taken was admissible to prove its value…"); In re Fund Raiser Products Co., Inc., 163 B.R. 744, 751 (Bankr.E.D.Pa. 1994) ("offer to repurchase the shares for $150,000 is therefore the best benchmark of its value. The Court agrees."); In re M.J. Shoearama, Inc., 137 B.R. 182, 190 (Bankr.W.D.Pa. 1990) ("The most reliable

216699

1    thus the ultimate sale price is expected to exceed a 20% equity cushion.  Accordingly, even

2    assuming *arguendo* that any of the Debtors' secured creditors had not consented to the

3    transaction with Auto Plus, they are adequately protected by an equity cushion.

4        4.    <u>The Secured Creditors' Interests Will Remain Adequately Protected</u>

5           <u>because the Priming Liens are Purchase Money Liens</u>.

6        Finally, the Debtors' secured creditors are adequately protected because the

7    proceeds of the DIP Facility will be used exclusively to purchase inventory—inventory that

8    will allow the Debtors to continue to function as a going concern and that the Debtors

9    would not have, but for the DIP Facility.  Indeed, it is expected that the Debtors' operating

10    profit will fund this case and the sales process that this the single best approach for

11    maximizing the value of the Debtors.

12    **VI.**

13    <u>**GOOD CAUSE EXISTS FOR HEARING THIS MOTION ON AN EMERGENCY BASIS**</u>

14        Section 364 of the Bankruptcy Code provides that a bankruptcy court, "after notice and a

15    hearing," may authorize a debtor to obtain credit or to incur debt secured by a junior lien on

16    property of the estate.  11 U.S.C. § 364(c)(3).  Section 102 of the Bankruptcy Code provides that

17    the phrase "after notice and a hearing," means "after such notice as is appropriate in the particular

18    circumstances, and such opportunity for a hearing as is appropriate in the particular

19    circumstances."  11 U.S.C. § 102.  Rule 4001(c) of the Federal Rules of Bankruptcy Procedure,

20    which governs the rules applicable to a debtor's obtaining of credit, provides that a bankruptcy

21    court may commence a final hearing on a motion for authority to obtain credit no earlier than

22    fifteen (15) days after service of the motion, but may conduct an interim hearing before such

23

24

---

25    evidence as to the value of the property in the store is the offer made to the former trustee"); <u>In re Asheville Building Associates</u>, 93 B.R. 918, 919 (Bankr W.D.N.C. 1988) (court considered "the best evidence of the value of the building to be the recent offer to purchase the building."); <u>In re Newman</u>, 59 B.R. 670, 674 (Bankr.E.D.Mo. 1986) ("(T)he offer to

26    purchase the ... property was properly admitted ... as evidence of what the value was."); <u>Caten v. Salt City Movers & Storage Co.</u>, 149 F.2d 428, 433 (2nd Cir. 1945) (offer letter was evidence of value); <u>Heiner v. Crosby</u>, 24 F.2d 191, 193 (3rd Cir.

27    1928) (Good faith offers are admissible to show fair value of stock); <u>Muller v. Southern Pacific B. Ry. Co.</u>, 83 Cal. 240, 243 (1890) ("Bona fide offers for property afford some test as to its value, and are, we think, admissible."); <u>Maine-New</u>

28    <u>Hampshire Interstate Bridge Authority v Ham's Estate</u> , 92 N.H. 277, 30 A.2d 7, 11 (1943) (both accepted and unaccepted offers "are admissible to show value.")

216699

1    fifteen (15) day period expires and, at such interim hearing, authorize the debtor to obtain credit to

2    the extent necessary to avoid immediate and irreparable harm to the debtor's estate pending the

3    conducting of the final hearing.    Fed. R. Bank. P. 4001(c)(2).    Furthermore, procedural

4    authorization for this emergency motion is found in Rule 9006[7] of the Federal Rules of

5    Bankruptcy Procedure, and in Local Bankruptcy Rule 9075-1.[8]

6            The law is clear that a bankruptcy court may schedule, on an expedited basis, a hearing on

7    a debtor's motion to obtain funds necessary to operate the debtor's business.    See In re Blumer, 66

8    B.R. 109, 113 (B.A.P. 9th Cir. 1986) (notice required under Bankruptcy Code provision

9    authorizing court to grant order extending credit upon notice and hearing may be satisfied in

10   emergency situation with telephonic notice); In re SGS Studio, 256 B.R. 580, 582-583

11   (Bankr.N.D.Texas 2000) (emergency hearing held on motion for post-petition priming loan); In re

12   Chicago, Missouri & Western Railway Company, 109 B.R. 308, 310 (N.D. Ill 1989) (emergency

13   hearing held on motion for post-petition priming loan).

14           The Ninth Circuit Court of Appeals has recognized that immediate interim relief may be

15   crucial to the success of a corporate reorganization:

16                       We realize that 'in certain circumstances, the entire reorganization
                         effort may be thwarted if emergency leave is withheld' and that
17                       reorganization under Bankruptcy Code 'is a perilous process,
                         seldom more so than at the outset of the proceedings when the
18                       debtor is often without sufficient cash flow to fund essential
                         business operations.'    It is for this reason that Congress specified
19                       that hearings concerning the use of cash collateral 'shall be
                         scheduled in accordance with the needs of the debtor.'
20
     In re Center Wholesale, Inc., 759 F.2d 1440, 1449 n.21 (9th Cir. 1985) (emphasis added) (citations
21
     omitted).    See also, In re Sullivan Ford Sales, 2 B.R. 350, 355 (Bankr. D. Me. 1980).
22
             Here, as set forth in detail in the Turner Declaration, the Debtor has insufficient cash to
23
     purchase inventory and meet the demands of its customers.    Unless the Debtors can obtain
24

25   _____

26   [7] Bankruptcy Rule 9006(c) provides, in pertinent part:  "when an act is required or allowed to be done at or within a
     specified time by these rules or be a notice given thereunder or by order of the court, the court for cause shown may in
27   its discretion with or without motion or notice order the period reduced."
     [8] Rule 9075-1(a) and (b) of the Local Bankruptcy Rules for the Central District of California provides for hearings on
28   an emergency basis or, alternatively, on notice shorter than would otherwise be required under the Local Bankruptcy
     Rules.

                                                    -19-

                                                                                                    216699

1    immediate post-petition financing, the value of the Debtors' going concern will be directly and

2    negatively impacted to shut its doors.  Without access to the loan, the Debtors would not have

3    sufficient resources to purchase inventory and meet the demands of customers.  Attached as

4    Exhibit "2" to the Turner Declaration is a Budget showing the anticipated receipts and

5    disbursements for the Debtors under the proposed financing.

6          The Debtors simply cannot preserve going concern value and maximize value for the

7    creditors without the proposed financing.  Accordingly, it is imperative that the Debtors

8    immediately obtain funding in accordance with the provisions as set forth herein.  Any delay in the

9    Debtors' ability to obtain the proposed funding could cause severe irreparable, damage to the

10   Debtors and their creditors.

11         Thus, the Debtors submit that good cause exists to have their matter heard immediately,

12   and that a final hearing on this Motion be scheduled for February 16, 2016.  The Debtors further

13   requests that, from the time of the interim hearing on this Motion to the time of the final hearing

14   on this Motion, it be allowed to borrow from Auto Plus sums consistent with the Budget, which

15   are necessary to prevent immediate and irreparable harm to its estate, as set forth hereinabove.

16                                    **VI.**

17                          <u>**CONCLUSION**</u>

18         Based on the foregoing, the Debtors respectfully submit that entry into the proposed DIP

19   Facility on the terms set forth in the DIP Loan Documents is in the best interest of the Debtors,

20   their creditors and all stakeholders, as it will preserve the Debtors' business as a going-concern.

21   DATED: January 22, 2016            **WINTHROP COUCHOT**

22                                     **PROFESSIONAL CORPORATION**

23                                     By:____/s/  Garrick A. Hollander_____

24                                          Garrick A. Hollander
                                          [Proposed] General Insolvency Counsel for Debtor
25                                        and Debtor-in-Possession

26

27

28

-20-

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:  660 Newport Center Drive, 4th Floor, Newport Beach, CA 92660.

A true and correct copy of the foregoing document entitled:  **DEBTOR'S EMERGENCY MOTION FOR ORDER PURSUANT TO SECTIONS 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE AND RULE 4001 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (A) AUTHORIZING  THE DEBTORS TO OBTAIN SECURED SUPERPRIORTY POSTPETITION FINANCING AND (B) SCHEDULING FINAL HEARING; MEMORANDUM OF POINTS AND AUTHORITIES** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On January 22, 2016, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On _____, 2016, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on January 22, 2016, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

VIA OVERNIGHT MAIL
Honorable Wayne Johnson
3420 Twelfth St., Suite 384
Riverside, CA 92501-3819

☒  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 22, 2016 | Melody Conour | /s/ Melody Conour |
|---|---|---|
| Date | Printed Name | Signature |

216699

# NEF SERVICE LIST

- Craig H Averch    caverch@whitecase.com
- Terence G Banich    tbanich@shawfishman.com, proberts@shawfishman.com
- Harold L Collins    halc@knfilters.com, hcollinslaw@aol.com
- Christina M Craige    ccraige@sidley.com
- Abram Feuerstein    abram.s.feuerstein@usdoj.gov
- Everett L Green    everett.l.green@usdoj.gov
- James A Hayes    jhayes@jamesahayesaplc.com
- Garrick A Hollander    ghollander@winthropcouchot.com, pj@winthropcouchot.com;vcorbin@winthropcouchot.com;mconour@winthropcouchot.com
- Gregory K Jones    GJones@dykema.com, CPerez@dykema.com
- Teddy M Kapur    tkapur@pszjlaw.com
- Jeannie Kim    jkim@winthropcouchot.com, vcorbin@winthropcouchot.com;pj@winthropcouchot.com
- Mette H Kurth    mkurth@foxrothschild.com, pchlum@foxrothschild.com
- Peter W Lianides    plianides@winthropcouchot.com, pj@winthropcouchot.com;vcorbin@winthropcouchot.com
- Jessica Mickelsen Simon    jessica.mickelsensimon@kattenlaw.com, adelle.shafer@kattenlaw.com;ecf.lax.docket@kattenlaw.com
- Alan I Nahmias    anahmias@mbnlawyers.com, jdale@mirmanbubman.com
- Samuel A Newman    snewman@gibsondunn.com
- Daniel H Reiss    dhr@lnbyb.com, dhr@ecf.inforuptcy.com
- Victor A Sahn    vsahn@sulmeyerlaw.com, agonzalez@sulmeyerlaw.com,agonzalez@ecf.inforuptcy.com;asokolowski@sulmeyerlaw.com;vsahn@ecf.inforuptcy.com
- Mohammad Tehrani    Mohammad.V.Tehrani@usdoj.gov
- Scott C Timpe    stimpe@mbnlawyers.com, scott.timpe@gmail.com;aacosta@mbnlawyers.com
- United States Trustee (RS)    ustpregion16.rs.ecf@usdoj.gov

## VIA OVERNIGHT DELIVERY

| | | |
|---|---|---|
| Metropolitan Automotive<br>Attn: Ron Turner, President<br>535 Tennis Court Lane<br>San Bernardino, CA 92408 | United States Trustee    NEF<br>Everett Green, Esq.<br>3801 University Ave., #720<br>Riverside, CA 92501 | MetroAuto<br>SpecialNotice20Largest, Etc.<br>Document No. 216197 |
| James Spencer    NEF1/7/16<br>c/o James A. Hayes, Jr., Esq.<br>1 Park Plaza, Suite 600<br>Irvine, CA 92614 | William B. Freeman, Esq.<br>Katten Muchin Rosenman LLP<br>Atty for Bank of the West<br>515 S. Flower St., #1000<br>Los Angeles, CA 90071 | Federal Mogul Motorparts<br>c/o Thomas Lauria, Esq.<br>White & Case<br>1155 Avenue of the Americas<br>New York, NY 10036-2787 |
| Alameda Co. Tax Collector<br>1221 Oak St.<br>Oakland, CA 93612 | Employment Dev. Dept.<br>Bankruptcy Group MIC 92E<br>PO Box 826880<br>Sacramento, CA 94280-0001 | Secd<br>Franchise Tax  Board<br>Bankrptcy Section MS:  A-340<br>PO Box 2952<br>Sacramento, CA 95812-2952 |

216699

1

2     Fresno County Tax Collector          Internal Revenue Service          Los Angeles County Tax Collector
      2281 Tulare St.                      PO Box 7346                       PO Box 54110
3     Fresno, CA 93712                     Philadelphia, PA 19101-7346       Los Angeles, CA 90054

4     San Bernardino County Tax Collector  San Diego County Tax Collector    State Board of Equalization
      172 West Third St.                   162 County Admin Center           Sp. Operations, Bkcy Team, MIC:74
5     San Bernardino, CA 92415             1600 Pacific Highway              PO Box 942879
                                           San Diego, CA 92101               Sacramento, CA 94279-0074
6

7     State Board of Equalization          R&B Inc. (Dorman Products, Inc.)
      Acct. Information Group, MIC:29      PO BOX 8500 S-4565                 Federal Mogul Corp.
8     PO Box 942879                        Philadelphia, PA 19178            PO BOX 636438
      Sacramento, CA 94279-0029                                              Cincinnati, OH 45263-6438
9

10    Standard Motor Products              Motorcar Parts Of America         Dayco Products, LLC
      93307 Network Place                  2929 California Street            PO BOX 847331
11    Chicago, IL 60673-1933               Torrance, CA 90503                Dallas, TX 75284

12

13    Monroe Auto Equip Co.                Cardone Industries                East Penn Mfg. Co. Inc.
      PO BOX 98990                         PO BOX 827267                     102 Deka Road
14    Chicago, IL 60693                    Philadelphia, PA 19182            Lyon Station, PA 19536-0147

15

16    Denso Products & Services            Four Seasons                      Advanced Innovative Technology
      PO BOX 601009                        88207 Expedite Way                2830 N. Oak Grove Ave.
17    Pasadena, CA 91189                   Chicago, IL 60695-0001            Springfield, MO 65803

18

19    Robert Bosch LLC Sales Group         Airtex Products LP                Spectra Premium Inds.
      PO BOX 95092                         PO BOX 60198                      8774 S State Rd 109
20    Chicago, IL 60694-5092               Saint Louis, MO 63160             Knightstown, IN 46148

21

22    IAP West Inc.                        Centric Parts Industry            Schaeffler Group USA Inc.
      20036 Via Baron                      14528 Bonell St                   15290 Collections CTR Dr
23    Compton, CA 90220                    City of Industry, CA 91746-301    Chicago, IL 60693

24

25                                                                                                        Secd
      Wix Filtration Corp                  KYB Americas Corp                 GMB North America
26    1 Wix Way                            7868 Solution Center              100 Herrod Blvd
      Gastonia, NC 28053                   Chicago, IL 60677                 Dayton, NJ 08810
27

28

216699

1

NEF
Attorneys for Prestone Products Corp., Airtex Products,
LP, ASC Industries, and Autolite
Terence G. Banich/Peter J. Roberts
Shaw Fishman Glantz & Towbin LLC
321 N. Clark St., Suite 800
Chicago, IL 60654

Attorneys for IEH Auto Parts, LLC  NEF
Dba Auto Plus
Craig H. Averch/Roberto Kampfner
White & Case LLP
555 South Flower St., #2700
Los Angeles, CA 90071

2

3

4

Attorneys for IEH Auto Parts, LLC    NEF
Dba Auto Plus
Thoms E. Lauria/Joseph Pack
White & Case LLP
Southest Financial Center, #4900
200 South Biscayne Blvd.
Miami, FL 33131

1/22/16CrtMan

Jody A Bedenbaugh
1320 Main St 17th Fl
POB 11070
Columbia, SC 29201

5

6

7

CWD, LLC; dba Centric Parts, Stoptech,
Powerslot, WDSource.Com
14528 Bonelli St.
City of Industry, CA 91746-3022

Wells Fargo Bank N.A.
300 Tri State Intl, #400
Lincolnshire, IL 60069-4417

Motorcar Parts of America, Inc.
Attn:  Corporate Officer
2929 California Street
Torrance, CA 9053

8

9

10

Flex Financing
Attn:  Corporate Officer
PO Box 15270
Irvine, CA 92623

Bank of the West
2527 Camino Ramon
San Ramon, CA 94583

TCF Equipment Finance Inc.
Attn:  Corporate Officer
11100 Wayzata Blvd., #801
Hopkins, MN 55305

11

12

13

Jules and Associates, Inc.
Attn:  Corporate Officer
515 S. Figueroa St., #1950
Los Angeles, CA 90071-3312

GreatAmerica Leasing Corp.
Attn:  Corporate Officer
PO Box 609
Cedar Rapids, IA 52406

Bank of the West, Trinity Divison
475 Sansome St., #19
San Francisco, CA 94111

14

15

16

17

LITIGATION

LITIGATION

18

19

Attorneys for Plaintiffs Jose Nativdad
Hernandez and Abel Mejia
Jack D. Josephson, Esq.
Law Offices of Jack D. Josephson, APC
3580 Wilshire Blvd. Suite 1260
Los Angeles, CA 90010

Attorneys for Plaintiffs Jose Nativdad
Hernandez and Abel Mejia
Yameen Salahuddin, Esq.
Rawa Law Group, APC
5843 Pine Ave., Suite A
Chino Hills, CA 91709

20

21

22

23

CREDITORS' COMMITTEE

24

25

Attorneys to the Official          NEF
Committee of Unsecured Creditors
Jeffrey E. Bjork, Christina M. Craige
Helena G. Tseregounis
Sidley Austin LLP
555 West Fifth St., Suite 4000
Los Angeles, CA 90013

Motorcar Parts of America, Inc.
Attn: Michael Umanskey
2929 California St.
Torrance, CA 90503

Cardone Industries
Attn: John Brawner
5501 Whitaker Ave.
Philadelphia, PA19124

26

27

28

216699

1

Dorman Products Inc.,
Attn: Thomas Knoblauch
2   3400 E. Walnut St.,
Colmar, PA 18915

3

Dayco Products, LLC
Attn: Steven Keller
1650 Research Dr., Ste 200
Troy, MI 48083

East Penn Mfg. Co. Inc.
Attn: Robert Bashore
PO Box 147
102 Deka Rd.
Lyon Station, PA 19536

4

Standard Motor Products
Attn: James Stewart
5   1801 Waters Ridge Dr.
Lewisville, TX 75057

Tenneco Automotive Operating Co., Inc.
Attn: Jason Borgardt
500 N. Field Dr.
Lake Forest, IL 60045

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

216699