1  GARRICK A. HOLLANDER − State Bar No. 166316
   ghollander@winthropcouchot.com
2  JEANNIE KIM – State Bar No. 270713
3  jkim@winthropcouchot.com
   **WINTHROP COUCHOT**
4  **PROFESSIONAL CORPORATION**
   660 Newport Center Drive, Suite 400
5  Newport Beach, CA 92660
   Telephone: (949) 720-4100
6  Facsimile: (949) 720-4111

7  [Proposed] General Insolvency Counsel for
   Debtor and Debtor-in-Possession

8  **UNITED STATES BANKRUPTCY COURT**

9  **CENTRAL DISTRICT OF CALIFORNIA**

10  **RIVERSIDE DIVISION**

| In re: | Case Nos. 6:16-bk-10096-WJ |
|---|---|
| METROPOLITAN AUTOMOTIVE, WAREHOUSE, INC., a California Corporation, | Chapter 11 Proceeding |
| Debtor and Debtor-in-Possession. | **DECLARATION OF RONALD TURNER IN SUPPORT OF DEBTOR'S <u>EMERGENCY</u> MOTION FOR ORDER PURSUANT TO SECTIONS 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE AND RULE 4001 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (A) AUTHORIZING THE DEBTORS TO OBTAIN SECURED SUPERPRIORTY POSTPETITION FINANCING AND (B) SCHEDULING FINAL HEARING** |
| | DATE: January 26, 2016<br>TIME: 2:00 p.m.<br>PLACE: Courtroom 304<br>3420 Twelfth Street<br>Riverside, California 92501 |

216702

I, Ronald Turner, declare and state as follows:

1. I am the President of Metropolitan Automotive Warehouse, Inc., a California corporation, the debtor and debtor-in-possession in Chapter 11 Case No. 6:16-bk-10096 WJ ("Metro"), and Star Auto Parts, Inc., a California Corporation, the debtor and debtor-in-possession in Chapter 11 Case No. 6:16-bk-10105 WJ ("Star," and together with Metro, collectively, the "Debtors").

2. I am authorized to make this declaration on behalf of the Debtors in support of the *Debtor's <u>Emergency</u> Motion for Order Pursuant to Sections 361, 362, 363 and 364 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure (A) Authorizing the Debtors to Obtain Secured Superpriorty Postpetition Financing and (B) Scheduling Final Hearing* ("Motion") filed by each of the Debtors in their respective Chapter 11 cases. By the Motion, the Debtors each seek, among other things, Court approval to (a) obtain postpetition financing pursuant, on an interim basis, in the form of a revolving loan facility ("DIP Facility") by which the Debtors may borrow up to $5 million to be provided by IEH Auto Parts, LLC d/b/a Auto Plus, or its designee ("Auto Plus") pursuant to the terms and conditions set forth in the Motion, and all other agreements, documents and instruments delivered or executed in connection therewith, as each may be amended, supplemented or otherwise modified from time to time (collectively, the "DIP Loan Documents")[1]; (b) grant to Auto Plus a superpriority administrative claim under the Bankruptcy Code, to the extent of the funds advanced post-petition to the Debtors; (c) grant to Auto Plus a junior lien pursuant to the Bankruptcy Code on all assets and property of the Debtors subject to a valid, binding, enforceable and non-avoidable lien to the extent of the funds advanced post-petition to the Debtors; and (d) grant to Auto Plus a senior, priming lien under the Bankruptcy Code in DIP Collateral[2]. The facts stated herein are within my personal knowledge, and if called upon as a witness, I could and would testify competently thereto.

---

[1] A true and correct copy of the term sheet for the DIP Facility is attached hereto as Exhibit "1" and incorporated herein by this reference.
[2] Capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Motion.

-2-

3. I am employed as the Debtors' President. In my role as President, I have been responsible for overseeing all aspects of the business and financial performance of the Debtors. Consequently, I am involved in supervising all aspects of the Debtors' business affairs. As President of the Debtor, I am very familiar with the Debtors' financial books and records, and have reviewed its financial reporting. I also am familiar with the Debtors' business operations.

4. As of the signing of this declaration, the Debtors do not have sufficient cash to purchase inventory to meet customer demand. The Debtors are depleting existing inventory. The Debtors must be able to obtain new inventory to preserve their going concern values. Without the ability to replenish inventory, the Debtors will suffer further declining sales, the loss of key sales personnel, and the loss of customer confidence. Absent the ability to acquire new inventory, the Debtors will be self-liquidating, ultimately resulting in the reduction of the enterprise value of the Debtors' businesses and leading to an inevitable wind-down of the Debtors' operations.

5. I am informed and believe thereon that the Debtors' primary secured lender, Bank of the West ("Prepetition Lender"), has consented to the proposed transaction with Auto Plus.

6. I believe that the Bank's interest is adequately protected. The Debtors have been in negotiations with multiple potential purchasers of the Debtors' assets, and remains in the process of selecting a stalking horse bidder. The Debtors have received purchaser offers for their assets in amounts well in excess of the balance owing to the Bank. The Debtors anticipate there will be a robust auction, and thus the ultimate sale price will substantially exceed a 20% equity cushion.

7. I also am informed that CWD, LLC, dba Centric Parts, Stop Tech, Power Slot, WD Source.com ("CWD") – a purported secured creditor of Metro – supports, or at a minimum, does not oppose the motion and the terms of the financing to be provided by Auto Plus.

8. Metro is a family-owned Southern California-based business, distributing aftermarket automotive parts for the last sixty years, with operations in southern California and central California. Metro distributes aftermarket automotive parts to retail stores and also sells to, and fulfills orders for, various e-commerce customers. Star, a California corporation and wholly-owned subsidiary of the Metro, also is a Southern California based retailer of aftermarket automotive parts. Star sells aftermarket automotive parts directly to (1) repair facilities, known in

the industry as the "Do-it-for-Me" channel, end-users, or the "Do-it-Yourself" channel, and (2) businesses that own and operate vehicle fleets. The Debtors collectively employ approximately 1,000 employees.

9. The Debtors grew very rapidly from 2009 through 2015. As a result of growing demand during this timeframe, the Debtors expanded operations from one distribution center and eight retail stores in 2009 to five distribution centers and nine retail stores in 2015, as well as launched a business to support a growing list of e-commerce customers across all five distribution centers. Due to the need to provide high service levels seven days per week and to compete aggressively to maintain and grow its e-commerce business, the business experienced rising operating costs and falling margins leading to operating losses and cash flow issues.

10. Recently, one of the Debtors' largest unsecured trade creditors, Federal-Mogul Autoparts ("Federal Mogul"), filed an action to recover on its claim. In its effort to obtain recovery by the Debtors on account of its claim, Federal Mogul filed a motion to appoint a Federal Court receiver in Michigan (the "Receiver Motion"). The Michigan Federal Court scheduled a hearing to discuss the Receiver Motion on January 7, 2016. To prevent the potential appointment of a receiver, the Debtors filed these chapter 11 cases on January 6, 2016 (the "Petition Date").

11. AutoPlus has expressed interest in purchasing the Debtors' assets at a sale governed by the Bankruptcy Code; however, the DIP Facility is separate from the sales process and is not conditioned on AutoPlus' successful participation in the sale process.

12. I believe that the Debtors' entry into the proposed DIP Facility is absolutely critical to the viability of the Debtors' operations. I further believe that the Debtors are worth more as an operating going-concern than a liquidator. If the Debtors do not enter into the DIP Facility, it is my sincere belief that the Debtors will be unable to replenish inventory and stock their shelves, resulting in a decrease in going concern value. Under this scenario, the creditors would realize significantly less from this bankruptcy proceeding, the purpose of which is to facilitate a sale of the Debtors as a going concern. The proposed DIP Facility will bridge the gap needed to close a sale on the Debtors' businesses, inuring to the benefit of the Debtors' stakeholders. It is my

sincere belief that access to the DIP Facility will increase the likelihood that the Debtors' estates will be preserved and the Debtors' creditors will receive the highest return on their claims.

13.  The Debtors have not been able to obtain the necessary working capital from any source under any terms, secured or unsecured. Because the Debtors have attempted but failed to obtain financing, and such financing is critical to the viability of its operations, I believe that the approval of this post-petition financing is necessary to preserve the assets of the estate and maximize value to the Debtors' creditors and stakeholders.

14.  I believe that the terms of the DIP Facility are fair and reasonable given the Debtors' current financial condition. The Debtors cannot obtain financing on terms better than those of this loan that provides the Debtors with the necessary liquidity to replenish their inventory and resume sales at a normalized pace. The interest rate and other terms of the loan are commensurate with the market.

15.  I further believe that the Debtors' entering into the DIP Facility is in the best interests of their estates, serves to preserve their estates, and is in the best interests of their creditors and stakeholders.

16.  The proposed DIP Facility is the result of a significant, determined effort by the Debtors, and it represents the most favorable financing currently available to the Debtors. The Debtors were unable to obtain more favorable financing terms from any other source, including parties who have expressed their desire to bid for the Debtors' assets in the upcoming sale. The Debtors have been in negotiations with several potential purchasers of the Debtors' assets, and have yet to select a stalking horse bidder. The Debtors have engaged in discussions with at least three (3) other potential bidders who have expressed some interest in extending credit. The Debtors, however, have been unable to come to any agreement to date, on more favorable financing terms than those provided in the DIP Facility.

17.  The Debtors have also been in contact with at least four (4) separate traditional DIP lenders. These traditional DIP lenders have refused to extend credit on equal or more favorable terms in particular because (a) they are unwilling to extend credit on a junior secured basis, and the Prepetition Lender will not subordinate its current first priority lien to a blanket lien in favor of a

1  DIP Lender, or (b) their potential DIP financing will not be packaged with a purchase agreement
2  providing that such lender be the stalking horse.

3      18.    The Debtors most recently tried to obtain credit from one of their vendors and
4  prospective bidder, Factory Motor Parts. The parties were unable to reach a deal. In addition, the
5  Debtors attempted but were unable to obtain more favorable financing terms from the Prepetition
6  Lender itself. The Prepetition Lender has indicated it prefers that the Debtors obtain additional
7  credit from a third party source, such as Auto Plus. I am advised and believe thereon that as long
8  as the Debtors have the ability to obtain credit from Auto Plus, the Prepetition Lender will not
9  extend any additional credit, let alone on more favorable terms.

10      19.    The Debtors do not have the luxury of time to wait for another deal to materialize.
11      20.    At the present time, the Debtors are unable to obtain comparable credit on terms
12  more favorable than the proposed financing from Auto Plus.

13      21.    The Debtors anticipate that they will seek to sell substantially all of their assets
14  pursuant to a sale under the Bankruptcy Code. The Debtors have been in negotiations with
15  multiple potential purchasers of the Debtors' assets, and are in the process of selecting a stalking
16  horse bidder. The Debtors have received purchaser offers for their assets in amounts well in
17  excess of the balance owing to the secured creditors. The Debtors anticipate there will be a robust
18  auction, and thus the ultimate sale price is expected to exceed a 20% equity cushion.

19      22.    The terms of the DIP Facility provide that the proceeds of the DIP Facility will be
20  used exclusively to purchase inventory—inventory that will allow the Debtors to continue to
21  function as a going concern and that the Debtors would not have, but for the DIP Facility. I expect
22  that the Debtors' operating profit will fund this case. I further believe that the sales process is the
23  single best approach for maximizing the value of the Debtors.

24      23.    The Debtor has insufficient cash to purchase inventory and meet the demands of its
25  customers. I believe that unless the Debtors can obtain immediate post-petition financing, the
26  value of the Debtors' going concern will be directly and negatively impacted to shut its doors.
27  Without access to the loan, the Debtors would not have sufficient resources to purchase inventory
28

and meet the demands of customers. Attached as Exhibit "2" hereto is a Budget showing the anticipated receipts and disbursements for the Debtors under the proposed financing.

24. The Debtors cannot preserve going concern value and maximize value for the creditors without the proposed financing. I believe it is imperative that the Debtors immediately obtain funding in accordance with the provisions as set forth herein. It is my further belief that any delay in the Debtors' ability to obtain the proposed funding could cause severe irreparable, damage to the Debtors and their creditors.

25. **For clarification, the proposed §507(b) claim of Auto Plus will only be senior to the Pre-Petition Lender relative to the DIP Collateral.**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 22nd day of January 2016, at San Bernardino, California.

_____
Ronald Turner

**<u>Exhibit "1"</u>**

**METROPOLITAN AUTOMOTIVE WAREHOUSE, INC., *ET. AL.***

Term Sheet for Proposed Debtor-in-Possession Revolving Facility[1]

| | |
|---|---|
| Borrowers: | Metropolitan Automotive Warehouse, Inc. ("Metro Automotive") and Star Auto Parts, Inc. ("Star Auto Parts," and together with Metro Automotive, the "Borrowers"), as debtors and debtors-in-possession in the cases (the "Cases") filed under chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"). The date on which the each of the Cases commenced is referred to herein as the "Petition Date". |
| DIP Lender: | IEH Auto Parts, LLC d/b/a Auto Plus, or its designee(s) (the "DIP Lender"). |
| Proposed DIP Facility: | A multiple-draw, revolving loan facility (the "Proposed Revolving DIP Facility") in the amount of up to $5 million available to the Borrowers upon satisfaction of the "Conditions Precedent to Closing Date" (set forth below), including entry of the Interim Order (defined below), and subject to the terms and conditions of the Interim Order, the Final Order (defined below) and the definitive financing documents (collectively, the "Loan Documents"). |
| Payment and Term: | Payments for the Proposed Revolving DIP Facility are to be made from the proceeds from the sale of Inventory (defined and described further below) when and as such proceeds are received. |
| | Notwithstanding the preceding paragraph, the Proposed Revolving DIP Facility is to be paid in full, including with interest and fees, on the date which is the earliest of: (i) the 40th day after the Petition Date, if the Bankruptcy Court has not entered a final order approving the Proposed Revolving DIP Facility in form and substance satisfactory to the DIP Lender in its sole discretion (the "Final Order"); (ii) the 120th day following the Petition Date; (iii) the effective date of a chapter 11 plan (a "Plan") in the Cases, which is confirmed by an order of the Bankruptcy Court; (iv) the closing date of a sale of all or any material part of the assets of the Borrowers under section 363 of the Bankruptcy Code (a "363 Sale"); and (v) date of acceleration by the DIP Lender after an Event of Default (as defined below). |
| Proceeds Account: | All proceeds of the Proposed Revolving DIP Facility, and all proceeds of any Senior Collateral (defined below), shall be held in an account at a financial institution satisfactory to the DIP Lender, and over which account (and all amounts on deposit therein) the DIP Lender shall have first priority, perfected lien and security interest (the "Proceeds Account"). |

---

[1] The terms and conditions set forth in this Term Sheet for the Proposed Revolving DIP Facility (the "DIP Term Sheet") are to be used solely as a basis for continued discussions and do not constitute a final commitment to provide a financing commitment of any sort or to prepare, negotiate, execute or deliver such a commitment. All figures, terms, and conditions set forth herein are subject to change or withdrawal at any time. This DIP Term Sheet is confidential and may not be disseminated to any person or entity other than the Borrowers and the Borrowers' agents without the express prior written consent of the DIP Lender.

| | |
|---|---|
| Security and Priority: | The Proposed Revolving DIP Facility and all other liabilities and obligations of the Borrower under the Loan Documents shall be entitled to superpriority administrative claim status pursuant to section 364(c)(1) of the Bankruptcy Code and shall also be secured: |
| | (1) pursuant to section 364(c)(3) of the Bankruptcy Code, by a junior lien on all assets and property of the Borrowers, now owned or after acquired, whether real or personal, tangible or intangible that was subject to a valid, enforceable, perfected and non-avoidable lien as of Petition Date; and |
| | (2) pursuant to section 364(d) of the Bankruptcy Code, by a senior priming lien on (a) the Proceeds Account and all amounts from time to time on deposit therein and (b) all inventory purchased with the proceeds of the Proposed Revolving DIP Facility, all accounts generated therefrom, and all other products or proceeds thereof (the collateral in this clause (2), the "Senior Collateral"). |
| | The assets described in (1) and (2) above constitute "Collateral." All documentation relating to the foregoing security and priority shall be in form and substance satisfactory to Lender. |
| Use of Proceeds: | Exclusively to procure inventory with proceeds of the Proposed Revolving DIP Facility in the ordinary course of business of the Borrowers directly from (a) the DIP Lender or (b) a supplier approved by the DIP Lender (collectively, "Inventory"). All suppliers whose products are carried by the DIP Lender shall be deemed approved suppliers. The price of Inventory procured directly from the DIP Lender shall be at the DIP Lender's WD invoice price, and if procured through a pre-approved supplier, pursuant to the terms set forth in the agreement with the respective supplier. For the avoidance of doubt, Senior Collateral includes Inventory. |
| Inventory Supply: | Payment for Inventory procured directly through the DIP Lender must be paid in full no later than the fifteenth (15th) day after receipt of such Inventory by the Borrowers and payment for Inventory procured through a supplier that has been approved by the DIP Lender must be paid in full no later than as required by the terms set forth in the agreement with the respective supplier. |
| Intercreditor Matters: | The priority of the security interests in the Collateral in respect of the Proposed Revolving DIP Facility and relative rights between the DIP Lender and the Prepetition Secured Lender, including the collection and distribution from proceeds of inventory, shall be as agreed between the DIP Lender and the Prepetition Secured Lender, will be set forth in an intercreditor agreement satisfactory to the DIP Lender in its sole and absolute discretion (the "Intercreditor Agreement"); *provided,* for the avoidance of doubt, that the DIP Lender shall at all times have a first-priority, perfected security interest senior in all respects with respect to any Senior Collateral.[2] |
| Mandatory and Optional Prepayments: | Customary for financings of this type.[3] |
| Closing Date: | The first date on which all Conditions Precedent to Closing Date shall have been satisfied. |

---

[2] [Mandatory prepayment of Senior Collateral proceeds to be discussed.]

[3] [Mandatory prepayment of Senior Collateral proceeds to be discussed.]

2

| | |
|---|---|
| Interest Rate: | All obligations of the Borrowers under the Proposed Revolving DIP Facility shall bear interest at the 30-day LIBOR Rate, payable monthly in arrears on the first business day of each month. The LIBOR Rate shall be equal to LIBOR plus seven percent (7%). All interest and fees shall be computed on the basis of a year of 360 days for the actual days elapsed. |
| | The default interest rate shall be the interest rate then in effect plus two percent (2%) per annum. |
| Fees: | To be agreed. |
| Amortization: | None. |
| Conditions Precedent to Closing Date: | The obligation of the DIP Lender to make the Proposed Revolving DIP Facility will be subject to customary conditions precedent for financing of this type, including, without limitation, the following: |
| | (a) the Loan Documents, in form and substance satisfactory to the DIP Lender in its sole and absolute discretion, shall have been executed and delivered; |
| | (b) the DIP Lender shall have received such agreements, instruments, approvals and other documents, each satisfactory to the DIP Lender in form and substance, as the DIP Lender may request; |
| | (c) entry of the Interim Order by the Bankruptcy Court, satisfactory in form and substance to the DIP Lender in its sole and absolute discretion, which Interim Order shall not have been reversed, modified, amended, stayed or vacated; |
| | (d) the Borrowers shall have paid to the DIP Lender all fees and expenses then owing to the DIP Lender on or before the Closing Date; |
| | (e) the representations and warranties contained in the Loan Documents shall be true and correct in all material respects as of the applicable borrowing date; |
| | (f) no default or event of default shall has occurred under the Loan Documents; and |
| | (g) the DIP Lender shall have received such financial and other information regarding the Borrowers as the DIP Lender may request. |
| Representations and Warranties: | Customary for financings of this type. |
| Covenants: | Customary for financings of this type. In addition: |
| | The DIP Lender and its advisors shall have reasonable access to the Borrowers' officers and financial information, including financial statements, projections, profit and loss and cash flow figures and other reports reasonably required by the DIP Lender. |
| | The Borrower shall deliver at the end of each business day to the DIP Lender a certified report of all Inventory, all accounts and all cash and other proceeds comprising Senior Collateral. |
| Events of Default: | Customary for financings of this type, including customary bankruptcy related defaults. |
| Remedies: | Upon the occurrence and during the continuance of an Event of Default, the Borrower may not expend any funds from the Proceeds Account. Following |

3

|   |   |
|---|---|
|   | three (3) days' notice of an Event of Default to the Borrower, any official committee of unsecured creditors appointed in the Cases, and the U.S. Trustee, unless such Event of Default is cured within such time, the DIP Lender shall have relief from the automatic stay to exercise remedies under the Loan Documents. |
| <u>Governing Law</u>: | All loan documents shall be governed by the laws of the State of New York, applicable to agreements made and performed in such State except as governed by the Bankruptcy Code. |
| <u>Out-of-Pocket Expenses</u>: | All fees, including legal and other professional fees, and all reasonable out-of-pocket expenses of the DIP Lender associated with the transaction, the Borrowers or the Case are to be paid by the Borrowers without the need for the filing of any applications with the Bankruptcy Court. |

4

**Exhibit "2"**

**Metropolitan Automotive Warehouse, Inc.**
*Weekly Cash Flow Forecast*

| week ending Saturday | Forecast 1<br>Week of 1/23/16 | Forecast 2<br>Week of 1/30/16 | Forecast 3<br>Week of 2/6/16 | Forecast 4<br>Week of 2/13/16 | Forecast 5<br>Week of 2/20/16 | 5 Week Total |
|---|---:|---:|---:|---:|---:|---:|
| **CASH FLOW** | | | | | | |
| **Receipts:** | | | | | | |
| Collections | 1,250,000 | 2,500,000 | 950,000 | 2,041,000 | 2,661,000 | 9,402,000 |
| Cash value life insurance proceeds | - | - | 450,000 | - | - | 450,000 |
| **Total Receipts** | **1,250,000** | **2,500,000** | **1,400,000** | **2,041,000** | **2,661,000** | **9,852,000** |
| **Disbursements:** | | | | | | |
| Trade vendor payments | 100,000 | 400,000 | 2,500,000 | 2,000,000 | 500,000 | 5,500,000 |
| Non-Trade Disbursements | | | | | | |
|   Payroll - *(includes PR Tax)* | | | | | | |
|     Hourly | 565,000 | - | 565,000 | - | 600,000 | 1,730,000 |
|     Salary - Non-sales | 95,000 | - | 95,000 | - | 95,000 | 285,000 |
|     Salary - Sales (Commission, T&E) | - | - | - | 125,000 | - | 125,000 |
|     P/R Taxes | 239,637 | - | 230,000 | 37,500 | 237,000 | 744,137 |
|     PTO / Severance | - | - | - | - | - | - |
|     Retention Bonus pool | - | - | - | - | - | - |
|   Temp Labor / Staffing | - | 10,000 | 10,000 | 10,000 | 10,000 | 40,000 |
|   401(k) | 30,501 | 13,500 | 13,500 | 13,500 | 13,500 | 84,501 |
|   Benefits | 150,000 | - | - | 150,000 | - | 300,000 |
|   Payroll fees | 5,500 | - | 5,500 | - | 5,500 | 16,500 |
|   Workers comp | 150,317 | - | - | 135,000 | - | 285,317 |
|   Rent | 141,454 | - | 175,402 | - | - | 316,856 |
|   Insurance - auto | 53,000 | - | 53,000 | - | - | 106,000 |
|   Insurance - other | - | 4,000 | 57,000 | - | - | 61,000 |
|   Freight | 60,000 | 59,000 | 59,000 | 59,000 | 59,000 | 296,000 |
|   Shipping supplies | 20,000 | 20,000 | 20,000 | 30,000 | 30,000 | 120,000 |
|   Fuel | 10,000 | 45,000 | 10,000 | 45,000 | 10,000 | 120,000 |
|   Fleet rental | 205,000 | - | 20,000 | 20,000 | 170,000 | 415,000 |
|   Equipment leasing | 31,339 | - | 74,646 | - | 23,386 | 129,371 |
|   Utilities | 4,586 | 12,000 | 12,000 | 14,000 | 14,000 | 56,586 |
|   Telecommunications | - | 7,000 | 7,000 | 7,000 | 7,000 | 28,000 |
|   IT / Software | 25,000 | 25,000 | 27,500 | 27,500 | 27,500 | 132,500 |
|   Credit card processing | - | - | 30,000 | - | - | 30,000 |
|   Sales tax | - | 70,000 | - | - | - | 70,000 |
|   Accounting | - | 15,000 | - | - | - | 15,000 |
|   Credit cards | - | 67,000 | - | - | - | 67,000 |
|   T&E - misc. | 7,000 | 7,000 | 7,000 | 8,000 | 8,000 | 37,000 |
|   Other G&A | 25,000 | 45,000 | 45,000 | 45,000 | 45,000 | 205,000 |
|   Customer rebates | - | 15,000 | 15,000 | - | - | 30,000 |
|   Loan payments | 4,894 | - | - | - | - | 4,894 |
|   Bank fees | 8,000 | - | - | - | 8,000 | 16,000 |
|   Deposits - *Total* | 107,500 | 272,500 | - | - | - | 380,000 |
|   Interest expense *(incl. fees & exp.)* | 56,000 | - | 150,000 | - | 45,000 | 251,000 |
|   Professional fees - *Total* | - | - | - | - | - | - |
|   US Trustee Fees | - | - | - | - | - | - |
|   Total non-trade | 1,994,727 | 687,000 | 1,681,548 | 726,500 | 1,407,886 | 6,497,661 |
| **Total Disbursements** | **2,094,727** | **1,087,000** | **4,181,548** | **2,726,500** | **1,907,886** | **11,997,661** |
| **NET CASH FLOW** | **($844,727)** | **$1,413,000** | **($2,781,548)** | **($685,500)** | **$753,114** | **($2,145,661)** |
| *cumulative* | *(844,727)* | *568,273* | *(2,213,275)* | *(2,898,775)* | *(2,145,661)* | |

1 of 2

Exhibit 2, Page 12

**Metropolitan Automotive Warehouse, Inc.**
*Weekly Cash Flow Forecast*

| week ending Saturday | Forecast 1<br>Week of 1/23/16 | Forecast 2<br>Week of 1/30/16 | Forecast 3<br>Week of 2/6/16 | Forecast 4<br>Week of 2/13/16 | Forecast 5<br>Week of 2/20/16 | 5 Week Total |
|---|---|---|---|---|---|---|
| **LIQUIDITY** | | | | | | |
| Beginning Cash - Book | 3,266,328 | 421,601 | 1,834,601 | 1,536,952 | 2,690,452 | 3,266,328 |
| Net cash flow | (844,727) | 1,413,000 | (2,781,548) | (685,500) | 753,114 | (2,145,661) |
| DIP drawdown / (paydown) | - | - | 2,483,900 | 1,839,000 | 314,850 | 4,637,750 |
| ABL paydown | (2,000,000) | - | - | - | - | (2,000,000) |
| other / adj | - | - | - | - | - | - |
| **Ending Cash - Book** | **421,601** | **1,834,601** | **1,536,952** | **2,690,452** | **3,758,417** | **3,758,417** |
| | | | | | | |
| **LOAN BALANCES** | | | | | | |
| **Bank of the West ABL** | | | | | | |
| Beginning Loan Balance | 20,284,583 | 18,284,583 | 18,284,583 | 18,284,583 | 18,284,583 | 20,284,583 |
| Loan paydown | (2,000,000) | - | - | - | - | (2,000,000) |
| **Ending Balance** | **18,284,583** | **18,284,583** | **18,284,583** | **18,284,583** | **18,284,583** | **18,284,583** |
| | *forecast* | *forecast* | *forecast* | *forecast* | *forecast* | |
| Ending Borrowing Base Availability | 17,753,269 | 17,300,144 | 16,246,394 | 16,013,144 | 15,193,931 | |
| **Ending Availability / (Over-advance)** | **(531,314)** | **(984,439)** | **(2,038,189)** | **(2,271,439)** | **(3,090,652)** | |
| Net Borrowing Base Position *(Cash+BB)* | (109,714) | 850,161 | (501,237) | 419,013 | 667,765 | |
| *Borrowing Base Change* | *(585,093)* | *(453,125)* | *(1,053,750)* | *(233,250)* | *(819,213)* | *(3,144,431)* |
| | | | | | | |
| **DIP Loan** | | | | | | |
| Beginning Balance | - | - | - | 2,483,900 | 4,322,900 | - |
| add: Drawdown | - | - | 2,500,000 | 2,000,000 | 500,000 | 5,000,000 |
| less: Repayment | - | - | (16,100) | (161,000) | (185,150) | (362,250) |
| **Ending Balance** | **-** | **-** | **2,483,900** | **4,322,900** | **4,637,750** | **4,637,750** |
| | | | | | | |
| DIP Interest | - | - | - | - | - | - |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 660 Newport Center Drive, 4th Floor, Newport Beach, CA 92660.

A true and correct copy of the foregoing document entitled: **DECLARATION OF RONALD TURNER IN SUPPORT OF DEBTOR'S EMERGENCY MOTION FOR ORDER PURSUANT TO SECTIONS 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE AND RULE 4001 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (A) AUTHORIZING THE DEBTORS TO OBTAIN SECURED SUPERPRIORTY POSTPETITION FINANCING AND (B) SCHEDULING FINAL HEARING** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On January 22, 2016, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On _____, 2016, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on January 22, 2016, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

VIA OVERNIGHT MAIL
Honorable Wayne Johnson
3420 Twelfth St., Suite 384
Riverside, CA 92501-3819

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 22, 2016 | Melody Conour | /s/ Melody Conour |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

-8-

NEF SERVICE LIST

- Craig H Averch    caverch@whitecase.com
- Terence G Banich    tbanich@shawfishman.com, proberts@shawfishman.com
- Harold L Collins    halc@knfilters.com, hcollinslaw@aol.com
- Christina M Craige    ccraige@sidley.com
- Abram Feuerstein    abram.s.feuerstein@usdoj.gov
- Everett L Green    everett.l.green@usdoj.gov
- James A Hayes    jhayes@jamesahayesaplc.com
- Garrick A Hollander    ghollander@winthropcouchot.com, pj@winthropcouchot.com;vcorbin@winthropcouchot.com;mconour@winthropcouchot.com
- Gregory K Jones    GJones@dykema.com, CPerez@dykema.com
- Teddy M Kapur    tkapur@pszjlaw.com
- Jeannie Kim    jkim@winthropcouchot.com, vcorbin@winthropcouchot.com;pj@winthropcouchot.com
- Mette H Kurth    mkurth@foxrothschild.com, pchlum@foxrothschild.com
- Peter W Lianides    plianides@winthropcouchot.com, pj@winthropcouchot.com;vcorbin@winthropcouchot.com
- Jessica Mickelsen Simon    jessica.mickelsensimon@kattenlaw.com, adelle.shafer@kattenlaw.com;ecf.lax.docket@kattenlaw.com
- Alan I Nahmias    anahmias@mbnlawyers.com, jdale@mirmanbubman.com
- Samuel A Newman    snewman@gibsondunn.com
- Daniel H Reiss    dhr@lnbyb.com, dhr@ecf.inforuptcy.com
- Victor A Sahn    vsahn@sulmeyerlaw.com, agonzalez@sulmeyerlaw.com,agonzalez@ecf.inforuptcy.com;asokolowski@sulmeyerlaw.com;vsahn@ecf.inforuptcy.com
- Mohammad Tehrani    Mohammad.V.Tehrani@usdoj.gov
- Scott C Timpe    stimpe@mbnlawyers.com, scott.timpe@gmail.com;aacosta@mbnlawyers.com
- United States Trustee (RS)    ustpregion16.rs.ecf@usdoj.gov

## VIA OVERNIGHT DELIVERY

| | | |
|---|---|---|
| Metropolitan Automotive<br>Attn: Ron Turner, President<br>535 Tennis Court Lane<br>San Bernardino, CA 92408 | United States Trustee<br>Everett Green, Esq.<br>3801 University Ave., #720<br>Riverside, CA 92501 | NEF<br>MetroAuto<br>SpecialNotice20Largest, Etc.<br>Document No. 216197 |
| James Spencer<br>c/o James A. Hayes, Jr., Esq.<br>1 Park Plaza, Suite 600<br>Irvine, CA 92614 | NEF 1/7/16 William B. Freeman, Esq.<br>Katten Muchin Rosenman LLP<br>Atty for Bank of the West<br>515 S. Flower St., #1000<br>Los Angeles, CA 90071 | Federal Mogol Motorparts<br>c/o Thomas Lauria, Esq.<br>White & Case<br>1155 Avenue of the Americas<br>New York, NY 10036-2787 |
| Alameda Co. Tax Collector<br>1221 Oak St.<br>Oakland, CA 93612 | Employment Dev. Dept.<br>Bankruptcy Group MIC 92E<br>PO Box 826880<br>Sacramento, CA 94280-0001 | Secd Franchise Tax Board<br>Bankrptcy Section MS: A-340<br>PO Box 2952<br>Sacramento, CA 95812-2952 |

| | | |
|---|---|---|
| Fresno County Tax Collector<br>2281 Tulare St.<br>Fresno, CA 93712 | Internal Revenue Service<br>PO Box 7346<br>Philadelphia, PA 19101-7346 | Los Angeles County Tax Collector<br>PO Box 54110<br>Los Angeles, CA 90054 |
| San Bernardino County Tax Collector<br>172 West Third St.<br>San Bernardino, CA 92415 | San Diego County Tax Collector<br>162 County Admin Center<br>1600 Pacific Highway<br>San Diego, CA 92101 | State Board of Equalization<br>Sp. Operations, Bkcy Team, MIC:74<br>PO Box 942879<br>Sacramento, CA 94279-0074 |
| State Board of Equalization<br>Acct. Information Group, MIC:29<br>PO Box 942879<br>Sacramento, CA 94279-0029 | R&B Inc. (Dorman Products, Inc.)<br>PO BOX 8500 S-4565<br>Philadelphia, PA 19178 | Federal Mogul Corp.<br>PO BOX 636438<br>Cincinnati, OH 45263-6438 |
| Standard Motor Products<br>93307 Network Place<br>Chicago, IL 60673-1933 | Motorcar Parts Of America<br>2929 California Street<br>Torrance, CA 90503 | Dayco Products, LLC<br>PO BOX 847331<br>Dallas, TX 75284 |
| Monroe Auto Equip Co.<br>PO BOX 98990<br>Chicago, IL 60693 | Cardone Industries<br>PO BOX 827267<br>Philadelphia, PA 19182 | East Penn Mfg. Co. Inc.<br>102 Deka Road<br>Lyon Station, PA 19536-0147 |
| Denso Products & Services<br>PO BOX 601009<br>Pasadena, CA 91189 | Four Seasons<br>88207 Expedite Way<br>Chicago, IL 60695-0001 | Advanced Innovative Technology<br>2830 N. Oak Grove Ave.<br>Springfield, MO 65803 |
| Robert Bosch LLC Sales Group<br>PO BOX 95092<br>Chicago, IL 60694-5092 | Airtex Products LP<br>PO BOX 60198<br>Saint Louis, MO 63160 | Spectra Premium Inds.<br>8774 S State Rd 109<br>Knightstown, IN 46148 |
| IAP West Inc.<br>20036 Via Baron<br>Compton, CA 90220 | Centric Parts Industry<br>14528 Bonell St<br>City of Industry, CA 91746-301 | Schaeffler Group USA Inc.<br>15290 Collections CTR Dr<br>Chicago, IL 60693 |
| Wix Filtration Corp<br>1 Wix Way<br>Gastonia, NC 28053 | KYB Americas Corp<br>7868 Solution Center<br>Chicago, IL 60677 | GMB North America<br>100 Herrod Blvd<br>Dayton, NJ 08810 |

Secd

| | | |
|---|---|---|
| NEF<br>Attorneys for Prestone Products Corp., Airtex Products, LP, ASC Industries, and Autolite<br>Terence G. Banich/Peter J. Roberts<br>Shaw Fishman Glantz & Towbin LLC<br>321 N. Clark St., Suite 800<br>Chicago, IL 60654 | Attorneys for IEH Auto Parts, LLC   NEF<br>Dba Auto Plus<br>Craig H. Averch/Roberto Kampfner<br>White & Case LLP<br>555 South Flower St., #2700<br>Los Angeles, CA 90071 | |
| Attorneys for IEH Auto Parts, LLC    NEF<br>Dba Auto Plus<br>Thoms E. Lauria/Joseph Pack<br>White & Case LLP<br>Southest Financial Center, #4900<br>200 South Biscayne Blvd.<br>Miami, FL 33131 | | 1/22/16CrtMan<br>Jody A Bedenbaugh<br>1320 Main St 17th Fl<br>POB 11070<br>Columbia, SC 29201 |
| CWD, LLC; dba Centric Parts, Stoptech, Powerslot, WDSource.Com<br>14528 Bonelli St.<br>City of Industry, CA 91746-3022 | Wells Fargo Bank N.A.<br>300 Tri State Intl, #400<br>Lincolnshire, IL 60069-4417 | Motorcar Parts of America, Inc.<br>Attn:  Corporate Officer<br>2929 California Street<br>Torrance, CA 9053 |
| Flex Financing<br>Attn:  Corporate Officer<br>PO Box 15270<br>Irvine, CA 92623 | Bank of the West<br>2527 Camino Ramon<br>San Ramon, CA 94583 | TCF Equipment Finance Inc.<br>Attn:  Corporate Officer<br>11100 Wayzata Blvd., #801<br>Hopkins, MN 55305 |
| Jules and Associates, Inc.<br>Attn:  Corporate Officer<br>515 S. Figueroa St., #1950<br>Los Angeles, CA 90071-3312 | GreatAmerica Leasing Corp.<br>Attn:  Corporate Officer<br>PO Box 609<br>Cedar Rapids, IA 52406 | Bank of the West, Trinity Divison<br>475 Sansome St., #19<br>San Francisco, CA 94111 |

LITIGATION              LITIGATION

| | |
|---|---|
| Attorneys for Plaintiffs Jose Nativdad Hernandez and Abel Mejia<br>Jack D. Josephson, Esq.<br>Law Offices of Jack D. Josephson, APC<br>3580 Wilshire Blvd. Suite 1260<br>Los Angeles, CA 90010 | Attorneys for Plaintiffs Jose Nativdad Hernandez and Abel Mejia<br>Yameen Salahuddin, Esq.<br>Rawa Law Group, APC<br>5843 Pine Ave., Suite A<br>Chino Hills, CA 91709 |

CREDITORS' COMMITTEE

| | | |
|---|---|---|
| Attorneys to the Official              NEF<br>Committee of Unsecured Creditors<br>Jeffrey E. Bjork, Christina M. Craige<br>Helena G. Tseregounis<br>Sidley Austin LLP<br>555 West Fifth St., Suite 4000<br>Los Angeles, CA 90013 | Motorcar Parts of America, Inc.<br>Attn: Michael Umanskey<br>2929 California St.<br>Torrance, CA 90503 | Cardone Industries<br>Attn: John Brawner<br>5501 Whitaker Ave.<br>Philadelphia, PA19124 |

| | | |
|---|---|---|
| Dorman Products Inc., <br> Attn: Thomas Knoblauch <br> 3400 E. Walnut St., <br> Colmar, PA 18915 | Dayco Products, LLC <br> Attn: Steven Keller <br> 1650 Research Dr., Ste 200 <br> Troy, MI 48083 | East Penn Mfg. Co. Inc. <br> Attn: Robert Bashore <br> PO Box 147 <br> 102 Deka Rd. <br> Lyon Station, PA 19536 |
| Standard Motor Products <br> Attn: James Stewart <br> 1801 Waters Ridge Dr. <br> Lewisville, TX 75057 | Tenneco Automotive Operating Co., Inc. <br> Attn: Jason Borgardt <br> 500 N. Field Dr. <br> Lake Forest, IL 60045 | |